JACKSON, *ex dem.* Ross, WILSON and others, *against* COOLEY.

In an action of ejectment, the lessors of the plaintiff resided in *England,* and claimed to be heirs of the person who died seised of the land in question. A witness here deposed that he knew the ancestor, and had charge of the land as his agent, and corresponded with him, and after his death, with the lessor, who sent him a power to act for him, as heir and devisee, and that his information was also derived from persons acquainted with the family of the lessors; it was held that this was sufficient evidence, *prima facie,* of pedigree or heirship, to go to the jury.

*Hearsay* evidence is sufficient to prove a pedigree.

The acknowledgment of a deed from persons describing themselves as heirs, taken, according to the directions of the act, before the *mayor* of *London,* is also a circumstance of weight in evidence of pedigree.

THIS was an action of ejectment. The cause was tried at the *Essex* circuit, before Mr. Justice *Van Ness,* the 15th *January,* 1811.

The plaintiff produced in evidence a patent for 2,000 acres of land, in *Boquett,* from the king of *Great Britain,* dated 16th *April,* 1765, to *James Ross,* and an exemplification of a deed for the same land from *Ross* to *William Wilson* and *John Goodrich,* in fee, dated 10th *August,* 1765; recorded in the secretary's office. The deposition of *Cary Ludlow,* of the city of *New-York,* taken by consent of the parties, was also read in evidence. He testified, that about thirty years ago, he knew *William Wilson,* who then resided in *New-York,* and removed to *England,* prior to the year 1783, where he died, as the witness understood, between the year 1788 and 1795; that he was not married; that the witness never heard that he left any children, nor any brother or sister, nephew or niece, except his nephew *John Wilson,* one of the lessors, who claimed to be the heir at law and devisee of *William Wilson.* The witness was the agent of *William Wilson,* in his life-time, and superintended his lands, particularly those in the patent to *Ross,* and corresponded with him; and after the decease of *William Wilson, John Wilson* sent a power of attorney, in which he

styles himself the heir at law and devisee of *William Wilson*, to the witness, which was dated the 16th *November*, 1798. The witness had corresponded with *John Wilson*, and had always understood from persons acquainted with the family, that he was the heir at law and devisee of his uncle *William Wilson*, who claimed one undivided moiety of the land patented to *Ross*, and *John Goodrich* the other moiety. The witness was the agent of *Goodrich*, in his life-time, and was, afterwards, empowered to act as agent of the children and *coheiresses* of *Goodrich*, who are also lessors of the plaintiff. The information of the witness was derived from the several powers of attorney he had received, during a correspondence with the parties, and from conversations with *Goldsborough Banyar*, and *Samuel Corp* and others, acquainted with the families of *Wilson* and *Goodrich*, but he had never seen *Joseph Wilson*, or the children of *Goodrich*, all of whom resided in *England*.

A witness for the defendant testified, that five or six years before, a Mr. *Kempthorne* came to view the premises, who said, that he was the grandson of *John Goodrich*, and that there were sixteen or eighteen heirs of *Goodrich* who claimed half of the patent, and several sisters belonging to the family. There was also some evidence on the part of the defendant, relative to an adverse possession of the tenants, which it is unnecessary to state.

It appeared that Mr. *Ludlow* had paid the taxes in 1786 and 1787, and directed the tenants to pay the taxes on the land in their possession. The jury, under the direction of the judge, found a verdict for the plaintiff.

A motion was made to set aside the verdict, and for a new trial, which was submitted to the court, without argument.

THOMPSON, J. delivered the opinion of the court. The lessors of the plaintiff claim title to the premises in

question, as heirs at law of William Wilson and John Goodrich, deceased. A regular title from the government having been shown in their ancestors, the only question upon the trial was, whether the evidence warranted the jury, in finding that the lessors were the heirs of Wilson and Goodrich. No objection was made to the competency of the evidence. It was, therefore, a question altogether for the jury. Cary Ludlow testified that he was well acquainted with William Wilson, when he resided in New-York; that he removed from this country to England prior to the year 1783; that he was his agent here, and superintended his lands; that he died, as he has always understood, some time between the years 1788 and 1795; leaving no children, or brother or sister, and that John Wilson was his only nephew and heir at law; that after the death of William Wilson, he acted as the agent of John Wilson, in relation to the lands in question, by virtue of a power of attorney from him, bearing date the 18th of November, 1795; wherein he is styled the heir at law of William Wilson; that he has corresponded with John Wilson, and has always understood, from the acquaintances of the family, and the people who claimed an interest in these lands under the patent to Ross, that John Wilson was both devisee and heir at law to William Wilson, who claimed an undivided moiety of the lands granted to Ross; and that John Goodrich claimed the other moiety. The testimony of Ludlow, showing that the other lessors of the plaintiff were the heirs at law of John Goodrich, was substantially the same. In addition to which, a deed from them to Ezra Coats, another lessor, was produced, wherein they are described as such heirs. This deed was duly acknowledged, before the mayor of London, agreeably to the statute of this state. Mr. Ludlow further stated, that his information was derived from the several powers of attorney he received, and

correspondence with the parties, and conversations with *Goldsborough Banyar*, *Samuel Corp*, and other acquaintances of the families of *Wilson* and *Goodrich*.

This testimony was sufficient, *prima facie*, to be submitted to the jury. Had there been any evidence, on the part of the defendant, casting any doubt or suspicion on the subject, the sufficiency of the evidence might be somewhat questionable. Testimony, as to pedigree, is not to be tested by the ordinary rules of evidence. The subject necessarily requires a relaxation of those rules; and it is, of course, always treated as an excepted case. Hearsay evidence, or any thing which shows a general reputation, is admissible to establish a pedigree. (*Peak. Evid.* 9.) The declarations of persons, who from their situation were likely to know, are competent evidence. Lord *Mansfield* (*Goodright v. Moss, Cowp.* 591.) says, tradition is sufficient in point of pedigree. *Circumstances* may be proved; such as an entry in a family bible; an inscription on a tombstone; a pedigree hung up in a family mansion, which are all good evidence. In this case, also, the *recitals in deeds*, the finding of a special verdict between other parties, stating a pedigree, (*Buller*, 233.) a bill in chancery, by an ancestor, (7 *Term Rep.* 3. *note*,) though not admissible in other cases, are competent to prove a family pedigree. The declarations of the members of a family, and of others, living in habits of intimacy with them, are said, by Lord *Kenyon*, to be received as evidence of pedigree; (*Term Rep.* 723.) and he does not confine it to the declarations of *deceased* persons only. The acknowledgment of the deed to *Coats*, by the heirs of *Goodrich*, before the mayor of *London*, is a fact of some importance in proof of pedigree. Our statute requires that the officer taking the acknowledgment should know, or have satisfactory evidence, that the grantors *are the persons described therein*, and who executed the deed. The grantors being described as such heirs, their identity must have been known to the

mayor; or proof thereof given to him. And this, though *ex parte*, is entitled to as much, if not more weight than many circumstances we find in the books which have been received as evidence of pedigree. The books furnish us with no definite or precise rule on the subject. Almost any circumstances, which are calculated to show a general reputation, and afford reasonable grounds of belief, are received as evidence of pedigree; and I cannot say that the testimony given to the jury, in this case, was not sufficient to warrant the verdict, in finding that the lessors of the plaintiff were the heirs at law of *Wilson* and *Goodrich*, especially, as it was in proof, that the defendant does not pretend to claim the title to the premises, or any thing more than the mere naked possession.

The opinion of the court, accordingly, is, that the motion for a new trial must be denied.

SPENCER, J. (*dissenting.*) On the trial of this cause, a title to the premises in question was shown in *William Wilson* and *John Goodrich*, each a moiety, both of whom are dead; and it became necessary to prove that *John Wilson* was the heir at law of *William Wilson*, and that *Margaret Goodrich* and others were coheiresses of *John Goodrich*.

The only proof of the pedigrees of those claiming to be the heirs of *William Wilson* and *John Goodrich*, was the deposition of *Cary Ludlow*. He states, that *William Wilson* died in *England*, as he has always understood, between the years 1788 and 1795, leaving *John Wilson*, his nephew, heir at law; that he (*Ludlow*) was the agent of *William Wilson*, during his life, and superintended his lands, particularly those in question; that he corresponded with *William Wilson*, and after his decease *John Wilson* empowered him to act as his agent on the premises. The power is dated 18th *November*, 1795, and in it *John Wilson* is styled the heir at law and devisee of *William*

*Wilson;* that he had corresponded with *John Wilson,*
and has always understood from all the acquaintances
of the family, and the people who claimed an interest
in said lands, under the patent to *Ross,* that *John Wil-
son* was both devisee and heir at law of *William Wilson,*
since *John* succeeded to the estate; that he was the agent
of *John Goodrich* in his life-time, and after his death he was
empowered to act as the agent of the children and coheiress-
es of *J. Goodrich,* who are the lessors of the plaintiff; that he
never heard that *W. Wilson* left any children, or brother or
sister, or any other nephew or niece than *John Wilson;*
that this information was derived from the several pow-
ers of attorney he received, from correspondence with the
parties, and *conversations* with *Goldsborough Banyar, Sa-
muel Corp,* and *other acquaintances* of the *families* of
*Wilson* and *Goodrich;* that he had always paid the taxes
on the land he knew was improved.   A deed from *Mar-
garet Goodrich* and others to *Ezra Coats,* jun. dated 2d
*September,* 1807, was then offered in evidence, and was
objected to, on the ground that the heirship of the grant-
ors was not sufficiently proved, though it was admitted
that *John Goodrich* was dead.   The deed was admitted.

The defendant's counsel raised several other objec-
tions, all of which I consider so clearly untenable, as not
to require an opinion on them; the only objection I
shall examine, is this, whether the evidence of Mr. *Lud-
low* made out, legally, the facts, that *John Wilson* was
the heir of *William Wilson,* and that *Margaret Goodrich*
and the other grantors in the deed to *Coats,* were the
heirs of *John Goodrich.*

I had, at first, supposed that there was fuller proof in
favour of *John Wilson's* claim to be heir of *William
Wilson,* than with respect to those alleging themselves to
be heirs of *John Goodrich,* but I am satisfied they stand
on the same footing.

As a general rule of law, all material facts are to be
proved by persons having personal knowledge of the

NEW-YORK,
May, 1811.

JACKSON
v.
COOLEY.

facts to which they depose; for evidence signifies that which demonstrates the truth of the point in issue. There are several exceptions to the rule, growing out of the particular circumstances of the cases; and in questions of pedigree, prescriptive custom, or character, hearsay evidence will be admitted, for the reason that, in these instances, (and some others might be added,) the facts to be proved are, in their very nature, not susceptible of positive proof; but whilst the general rule of law is relaxed to the necessity of particular cases, care should be taken, not to go beyond that necessity, and admit the most vague hearsays.

The testimony of Mr. *Ludlow* goes to show, first, that he was the agent of *William Wilson* and *John Goodrich*, in their life-times; second, their deaths; third, powers of attorney from *John Wilson*, the supposed nephew of *William Wilson*, and from the children and coheiresses of *John Goodrich;* fourth, that he paid taxes on the improved lands in behalf of his constituents; and fifth, information derived as well from the powers of attorney, and correspondence with the parties, as from conversation with Messsrs. *Banyar* and *Corp*, and other acquaintances of the families of *Wilson* and *Goodrich*, that they are respectively heirs of *Wilson* and *Goodrich*.

To the two first facts there can be no objection. Mr. *Ludlow's* testimony was competent to prove them. The other facts do not establish, even *prima facie*, the fact of heirship.

The powers of attorney and correspondence, were acts done by the persons asserting themselves to be heirs; and upon no principle can such acts be evidence in their favour, to establish the facts they set up. A correspondence with a person abroad may enable his correspondent here to testify to his hand-writing; and the writing thus proved may be used against the foreign correspondent; but he cannot create evidence for himself.

The correspondence and powers of attorney might be evidence against the persons asserting themselves to be heirs; but it would be overthrowing every rule of evidence to admit them as evidence for them. (5 *Term Rep.*121.) The circumstance that they live abroad cannot alter the effect of their acts. If a power of attorney, and letters, would be evidence of the heirship in this case, then such acts would equally be evidence, if the parties resided here.

The payment of taxes is thrown in as a make-weight. It cannot be considered as any evidence whatever of ownership. Taxes are frequently impo-sed without any designation of the owner; and if pay-ment of them was to be regarded as evidence of title, no man would be secure.

It comes then to this; is the information of Messrs. *Banyar* and *Corp*, and *other acquaintances* of the fami-lies, that kind of hearsay, in the case of pedigree, which the law requires? I think it clearly is not.

It is not shown in the case, where Messrs. *Banyar* and *Corp*, and the other acquaintances of the families re-side, or whether they are living or dead. If they reside within the jurisdiction of the court, then it follows, that instead of our having their knowledge of the fami-lies, we have the intelligence at second hand. *Peake*, (in his *Treatise on Evidence*, p. 11.) after speaking of hearsay evidence, in cases of pedigree, prescription and custom, says, " In these cases, therefore, the law de-parts from its general rule, and receives evidence of the declarations of deceased persons, who, from their situa-tion, were likely to know the facts, and also the general reputation of the place, or family most interested to pre-serve in memory the circumstances attending it; any thing which shows such reputation is, on a question of this sort, received in evidence, though oftentimes wholly inadmissible in other cases." Again, (p. 12.) " So to prove the state of a family, as who a man married, what children he had, that *A.* died abroad, &c. declarations of

deceased persons, who, from their situation were likely to know, and the general belief of the family, are sufficient." And (p. 13.) he illustrates the distinction between hearsay evidence of mere facts, and of general reputation, between the proof in cases of pedigree, and cases of custom and prescription. (1 *Bull. N. P.* 294, 295.)

Had Mr. *Ludlow* been acquainted in the families of *Wilson* and *Goodrich*, and from that been likely to know the relation which these persons bore to *Wilson* and *Goodrich*, his testimony would have been competent; but it is derived from others, none of whom appear to be dead, and all of whom, for aught that appears, may be amenable to our process. Such testimony never was admitted to be sufficient; and though to admit it in this case might probably relieve the party from expense and trouble, and promote justice, I confess I am unwilling to break in upon the established rules of evidence, and put every thing afloat.

It appears to me, therefore, that there ought to be a new trial, with costs, to abide the event of the suit.

                                        Motion denied.