ALBANY,
Oct. 1825.

Jackson
v.
King.

JACKSON, *ex dem.* BOGERT and others, *against* KING.

EJECTMENT for land in Halfmoon, in the county of Saratoga, tried at the circuit in that county, June 9th, 1824, before NELSON, C. Judge.

On the trial, it appeared that the defendant, and those under whom he claimed, had possessed the land for 30 or 40 years, but no adverse possession was made out; and the main question was, whether certain testimony, which will be found stated at large in the opinion of the court, was admissible to establish the pedigree of the lessors of the plaintiff. Certain parts of the evidence were objected to as inadmissible, by the defendant's counsel. They were, however, received by the Judge; but on hearing the whole of the testimony which the plaintiff produced, he directed a nonsuit, on the ground that William Appel, from whom the plaintiff claimed to derive title, was not sufficiently identified with the one of the same name in the patent under which they claimed. The case at bar, therefore, involved the two questions, whether the testimony was competent to show pedigree; and also whether there was sufficient to go to the Jury upon the identity of the patentee.

The whole is so fully stated by the court, that it need not be farther noticed here.

*J. L. Wendell,* for the defendant, moved to set aside the nonsuit, and for a new trial; and he cited *Jackson* v. *Goes,* (13 John. 518, 523;) *Daniel* v. *North,* (11 East, 372;) *Jackson* v. *Boneham,* (15 John. 226, 228;) *Berkeley Peer-* and it lies with the defendant to rebut this, by showing another of corresponding name, age, &c. or in some other way.

The general rule is, that registers of births, marriages and burials are competent evidence, on a trial, to prove a pedigree; and when the original is of a public nature, (e. g. the records of the reformed Dutch Church in the city of New-York,) a sworn copy is admissible.

Hearsay in the family, and among relations, tradition, and any thing which shows a general reputation, is also admissible to establish a pedigree.

Producing letters patent to one, and then tracing a descent from one of the same name, are *prima facie* evidence that the patentee and ancestor are the same person;

The nature and force of evidence derived from a register of births, marriages, &c. in establishing a pedigree; and what is sufficient, connected with proof of search in the register, its dates, and other evidence as to the family, to require the question of pedigree to be submitted to a jury, and *prima facie,* sufficient to establish it.

Proof of identity, either of the plaintiff or defendant, with one named in the contract, &c. proved, is never necessary in the first instance. Producing the contract, bearing the same name with the party in the suit, is, *prima facie,* sufficient; and throws it upon the other party to produce evidence against the identity.

*age case*, (4 Campb. 401, 409;) 1 Phil. Ev. 186; *Rich* v. *Johnson*, (2 Str. 1142.)

*G. W. Kirtland* and *S. G. Huntington*, contra, cited 1 Phil. Ev. 321, 325, 326; Adams on Eject. 55, 56, 252, 3; 2 Bl. Com. 209; Peak. Ev. 309, 310, 355: Pow. on Dev. 184; Rob. on Wills, 297; 11 Mod. 128; 8 East, 566; 2 Phil. Ev. 188; 15 East, 294, *note* (a); 5 Burr. 2604; 1 Caine's Rep. 84; Cowp. 217; 1 Campb. Rep. 196; 4 Campb. Rep. 34; Woodf. L. & T. 489; 2 W. Bl. Rep. 1099; 3 John. Cas. 109, 118; 10 John. 377; Cowp. 102; 2 John. Rep. 573.

*Curia*, per Woodworth, J. On the 10th day of September, 1708, a patent was granted to William Appel including the premises in question. The lessors of the plaintiff claim to be his heirs at law.

At the trial, a sworn copy of certain entries of baptisms and marriages, in the records of the Reformed Protestant Dutch Church in the City of New-York, was given in evidence, to prove the pedigree of the lessors of the plaintiff; by which it appeared, that on the 26th of May, 1695, one William Appel and his wife had a son baptized by the name of Simon; that in 1719, Magdalena, and on the 24th of September, 1721, Gertruig, daughters of Simon Appel, were also baptized; and that on the 25th of August, 1743, Magdalena Appel was married to Abraham Pelts.

In almost all the books, which treat on the subject of evidence, it is laid down, that the register of births, marriages, and burials is competent evidence; and wherever an original is of a public nature, and admissible in evidence, an examined copy will equally be admitted. (Phil. 320, 306. Peak. 86. Bull. N. P. 247.) This rule is necessary, as well for the security of the instrument, as for the convenience of the public. In addition to this, the hearsay evidence of pedigree was competent, and, of itself, sufficient.

Baron Gilbert, in his treatise on evidence, 112, lays down the rule, that hearsay is good evidence, to prove who is the **grand** father, when he married, what children he had; of

which it is not reasonable to suppose the party has better evidence.

Bogert testified, that, from conversation in his family, and among his relations, from his infancy, he always understood and had been informed, that Magdalena Pelts was the daughter of one Simon Appel ; and that Simon was the oldest son of one William Appel. Testimony, as to pedigree, is not to be tested by the ordinary rules of evidence. It forms an exception to the general rule. Hence it is, that any thing which shows a general reputation, is admissible to establish it. (Peak. 9.) In Cowp. 591, (*Goodright* v. *Moss*,) Ld. Mansfield held, that tradition is sufficient in point of pedigree. Ld. Kenyon observed, in the case of *The King* v. *The Inhabitants of Eriswell*, (3 T. R. 723,) " I admit that declarations of the members of a family, and perhaps of others living in habits of intimacy with them, are received in evidence as to pedigrees ; but evidence of what a mere stranger has said, has ever been rejected in such cases." This doctrine was also sanctioned by this court, in *Jackson* v. *Cooley*,( 8 John. 128.) In *Jackson* v. *Bonsham*, (15 John. 226,) a sworn copy of the records of the town of Stonington, which contained the date of the marriage of the parents of the lessors, and the time of the birth of their children was admitted. In the opinion delivered, Thompson, Ch. J. says " we do not perceive any objection to the admission of a sworn copy of the records, as evidence of the family."

If, then, the evidence was properly received, the question to be decided is, whether William Appel, mentioned in the records of the church, is to be considered the person to whom the patent issued. In order to test this point, let us suppose that an ejectment had been commenced by William Appel in his life time, to recover the possession, and that he was the only lessor ; would not the production of the patent be all that was necessary, in the first instance, to make out a title ? I apprehend this question has been decided by our courts. In *Jackson ex dem. Shultz* v. *Goes*, (13 John. 518,) letters patent to Peter Shultz, one of the lessors, were produced. The defendant proved, that there was another person of the same name, who was too young, during the rev·

olutionary war, to be a soldier; and that the lessor himself had not been a soldier. Upon that evidence it was held, that the defendant was entitled to judgment. By this statement it will be seen, that no question was raised, whether the plaintiff was bound in the first place, to prove his identity, as well as produce his patent. On the contrary, the right of the defendant to go into this evidence, was alone contested. The counsel for the defendant admitted, on the argument, that the lessor, on producing the patent, was, *prima facie*, entitled to recover. Spencer, Justice, observes, " In this action, whenever the plaintiff introduces a deed conveying the premises to a person, of the name of his lessor, it is, *prima facie*, evidence, that the lessor is the real grantee; the burthen of disproving this, and repelling the presumption, is thrown on the defendant; and he may prove that the deed was granted to a different person of the same name." Thompson, Ch. J. observed that it was always open to a defendant in ejectment, to show that the lessor was not the person intended by the patent, though he may bear the same name. The cases cited by the defendant's counsel from 1 Campbell, 196, and 4 Campbell, 34, seem to contravene this rule. In the first case, the action was to recover copyhold premises. It appeared that certain persons of the same name with the lessors, had been admitted as tenants in fee. It was contended that evidence of the identity of the persons admitted ought to be given. Ld. Ellenborough was of that opinion, holding that there was not sufficient evidence of the admission of the lessors. In the latter case, the issue was *non est factum;* the witness produced was unacquainted with he defendant; and testified merely that a person executed the bond, in the name of the defendant. This case does not apply; for the proof was manifestly defective; the witness not knowing that the person who signed the bond, was of the same name with the defendant. Dampier, Justice, observed, "that some evidence of identity was indispensably necessary; and that even presuming that the person who executed, was of the same name, he asked, how did it appear that it was the defendant sued in the action? These were *nisi prius* cases; and, however respectable,

ALBANY,
Oct 1825.

Jackson
v.
King.

cannot be regarded as a rule of decision here, in opposition to the practice recognized and acted upon in our own courts. The rule we have adopted is, that proof of identity may always be admitted, when the fact is questioned; leaving to the defendant the right of showing that the plaintiff is not the person intended. As far as I am acquainted, the course of practice in this state has corresponded with this rule. I have never known a case where a plaintiff, having the name of a patentee or grantee, was required to go farther than the production of his deed or patent; unless the presumption of identity was first repelled by the defendant; nor where the production of a bond or note on trial, was not holden, *prima facie*, sufficient against a defendant of the same name with the obligor or maker.

If, then, William Appel, described in the records, had been the lessor, his identity would be presumed, until disproved by the defendant; because there is no proof that there ever was another person of that name. The presumption cannot be affected, whether he stands before the court, as a lessor, or the ancestor, under whom the lessors of the plaintiff claim. The presumption is not founded on the circumstance, that an action happened to have been commenced; but on this the patent is to William Appel; there was a person of that name, and no other or different person is proved to have existed. On the principles laid down, the conclusion is, that William Appel, described in the records was the patentee.

The next question is, whether the evidence of pedigree, derived from the records of baptisms, was sufficient? They prove that William Appel had a son named Simon: that one Simon Appel had a daughter, Magdalena, baptized in 1719; and another daughter, Gertruig, baptized in 1721. That Simon Appel, mentioned in the extract of baptism in 1719, was the son of William, is, I think, to be presumed. The presumption is considerably fortified by the fact, that William appears to have been one of the sponsors. But it may be asked, what is the use of allowing the registers of births, marriages, and baptisms? If A claims that B is his ancestor, as grandfather; that such ancestor has been dead a

ALBANY,
Oct. 1825

Jackson
v.
King.

century; and his son C half a century; it cannot be expected that living witnesses can be produced, to prove the relationship of past generations. He may, then, resort to the register. What fact does that establish? It may appear that B was married; that he had a son C afterwards baptized; that C afterwards had a son A baptized; on the face of the register, it does not appear that A was the son of C or that C was the son of B; but it is the best evidence the nature of the case admits; and, because greater evils are apprehended from the rejection of such evidence, than its admission, the law has relaxed the general rules, and allowed the exception. But after all, the evidence would be unavailing, unless the law presumed that the persons named in the register, were the ancestors of the claimant; they all bearing the same names; and no evidence being adduced that there had ever been other persons of that name. From the search made by Bogert, the witness, in the book of records, for a great number of years, and nothing appearing to show that there was ever any other William or Simon Appel; from the fact that Simon had a daughter, Magdalena; and that a person, of her name, was married in 1743 to Abram Pelts; from the dates of the several baptisms and marriages being at such distance of time from each other as to be consistent with the claim, I think it may be presumed, that these persons are descended of William Appel in a direct line. The testimony of Mrs. Van Deusen proves that Magdalena Pelts, the grandmother of one of the lessors, was the widow of Abram Pelts. She died in 1795. Her age is not stated. It is evident, however, she was far advanced in years, as her grand daughter was born in 1771. It is a reasonable presumption that she is the person whose marriage is certified to have taken place in 1743.

From the preceding view, it follows that the Judge erred in directing the nonsuit. The evidence produced by the plaintiff was, *prima facie*, sufficient to entitle him to recover.

Whether the presumption that William Appel, named in the certificate as the patentee, has been repelled by the evidence, on the part of the defendant, is a question of fact, proper for the consideration of the jury, under the direction

ɔf the court. The declarations of Mrs. Pelts, and the long acquiescence, were circumstances bearing on this question. It would be premature, in this court, to express an opinion now, as to the weight of testimony on this point, until a jury have passed on it.

ALBANY,
Oct. 1825.

With respect to the possession it was not adverse at its commencement, nor at any subsequent period. Schauber, the first possessor, declared he had no title. He sold to William King, from whom the defendant received the possession. There is evidence that valuable improvements have been made; but none that the possessors claimed title.

I am of opinion that the nonsuit be set aside, and a new trial granted, with costs to abide the event.

Motion granted.