ELIZA MAHANEY, Respondent, *v.* MUTUAL RESERVE FUND LIFE ASSOCIATION, Appellant.

*Life insurance — age of the insured — weight of evidence.*

A verdict in favor of the plaintiff, in an action brought against an assessment life insurance association to recover upon a certificate of membership issued to the mother of the plaintiff, and in which the plaintiff was named as the beneficiary,

*Held,* to be against the weight of evidence upon the material and disputed question of the deceased member's age, in view of the necessarily uncertain and inconclusive character of opinion evidence given on behalf of the plaintiff on the subject of age, and in view of evidence produced in opposition thereto furnished by statements of the member in applications for United States pensions made by her, by English records of the registry of births of the member's children, by the date of the marriage of one of the member's children and the age of the child at the time, and by a declaration of the plaintiff as to her mother's age in an application made by the plaintiff for membership in a

life insurance association, all of which tended to show that the age of the deceased member was from ten to twenty years greater than that stated by her in her application for membership.

APPEAL by the defendant, Mutual Reserve Fund Life Association, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of Oswego county on the 5th day of February, 1892, upon a verdict rendered at the Oswego Circuit, and from an order dated and entered in said clerk's office on the 27th day of January, 1892, denying the defendant's motion for a new trial made upon the minutes, and also from an order of like date granting an extra allowance of costs to the plaintiff.

The action is upon a certificate of membership, issued by the defendant to Catharine Mahaney, the mother of the plaintiff, on the 9th of June, 1885, in and by which it was declared that within ninety days after the receipt of satisfactory evidence of the death of the member, there should be payable to the plaintiff, if she was then alive, otherwise to the legal representatives of the member, the sum of $1,000 from the death fund of the association, or from any moneys that should be realized to that fund from the next assessment to be made as therein stated. Catharine Mahaney died on the 8th of April, 1890, and the proofs of death were furnished to the defendant on the 23d of April, 1890.

The defenses relied on are, *first,* that there has been a breach of a warranty in the application for membership, that the applicant was born November 10, 1834, and, *second,* that there was fraud in making the statement as to the age of the applicant.

*W. H. Kenyon,* for the appellant.

*Whitney & Bulger* and *J. B. Higgins,* for the respondent.

MERWIN, J.:

In the application of Catharine Mahaney for membership in the defendant, it was stated that she was born on the 10th day of November, 1834, in the county of Waterford, Ireland, and that her age at next birthday, being November 10, 1885, was fifty-one years. The court charged the jury that if the age of the applicant was more than as stated, the plaintiff could not recover. The jury, therefore, in finding for plaintiff, in effect found that the age was correctly stated. The main point presented by the appellant upon this appeal is that such finding is against the weight of evidence.

The applicant and her husband, Cain O. Mahaney, came to this country from England prior to 1860. It was shown, by the testimony of Ellen Delong, a sister of plaintiff, and not denied, that the maiden name of her mother was Catharine Dudley, that she had altogether seven children, three of whom died before she came to this country, and that the other four who came over with their parents, and are still living, were the witness, the plaintiff, whom she called Lizzie, Cornelius and Mary. In 1862 Cain O. Mahaney enlisted at Oswego as a soldier in the service of the United States, and it appears that he died in May, 1878. The defendant puts in evidence an affidavit made by Mrs. Mahaney on 14th of August, 1878, for the purpose of obtaining a pension. This was made at Oswego before a special agent of the pension office and was produced by him from the records of the pension bureau, and he testifies that it was written by him at the dictation of Mrs. Mahaney, and that he then read it over to her and she signed and swore to it. There is nothing in the case to discredit his testimony. In this affidavit Mrs. Mahaney states, among other things, that " her age is 55 or 60 years ; " that she was married to Cain " in Chelsea, county of Middlesex, England, about in 1842," and came with her husband to this country in 1857 ; that her husband, at his death, was about sixty-six years old.

The defendant also puts in evidence another application made by Mrs. Mahaney for a pension on 26th of September, 1889. This was filed in the pension office October 3, 1889, and was signed at Oswego in the presence of two witnesses and certified to by the county clerk of Oswego county. The deputy clerk who certified to the paper and one of the subscribing witnesses were called as witnesses at the trial and both testified that the paper was at the time read over to Mrs. Mahaney. The evidence of these witnesses was not discredited. In this application it was recited that Mrs. Mahaney was sixty-six years old, and it stated, among other things, that Cain O. Mahaney, her husband, enlisted at Oswego on the 29th of August, 1862, and that she under the name of Catharine Dudley was married to him " on the — day of July, 1844, by Rev. Robinson at London, England."

The defendant also puts in evidence a transcript from the register of marriages of the parish of St. Nicholas, Deptford, of the county

of Kent, England, showing that on the 23d of May, 1841, Cain Mahaney and Kittie Dudley, both of full age, were married in the parish church by A. E. Kitchley, vicar; also a transcript from the register of births for the subdistrict of South Chelsea, in the county of Middlesex, England, showing the birth on the 10th of May, 1844, of Ellen, daughter of Cain Mahaney and Kittey Mahaney, formerly Dudley; also another transcript from the register of births of the same district showing the birth on the 24th of September, 1849, of Elizabeth, daughter of Cain Mahaney and Catharine Mahaney, formerly Dudley; also another transcript from the register of births for the subdistrict of Chelsea North East, in the county of Middlesex, showing the birth on the 21st of March, 1852, of Cornelius, son of Cain Mahaney and Catharine Mahaney, formerly Dudley. Transcripts of similar entries of births in the general register office, Somerset House, London, were given in evidence, as well as the law providing for the registering of marriages and births, and in pursuance of which the registers were kept. Photographs were also given of the original entries in the registers, and these were verified by the testimony of the person under whose supervision they were taken. Besides these records, the defendant introduced a large number of witnesses, who had been acquainted with Mrs. Mahaney for different periods of time since her arrival in this country, and who gave their opinions as to her age, based upon her appearance as they had observed it, and some of them had heard her speak in general terms of her age. The testimony of these witnesses was to the effect that she was from ten to twenty years older than she had stated in her application in question.

To rebut this evidence, the plaintiff introduced a large number of witnesses, who had been acquainted with Mrs. Mahaney to more or less extent, and who, in most instances, placed her age at the time of her death at about fifty-six years. One of these witnesses, Mr. Cunningham, whose evidence is particularly relied on by the plaintiff, testified that he had seen Mrs. Mahaney and Cain O. Mahaney in Bristol, England, before 1850, and that they were not married then, that he knew of. He does not profess to give the age of either at that time, except that he says he thinks that Mrs. Mahaney was older than he was. Of himself, he says that he was born at Bristol in 1835 or 1837, and made Bristol his home until about 1850, and

was seventeen or nineteen when he left there. Of Cain O. Mahaney, he says he saw him in the city of Bristol, "I didn't know him long, perhaps two or three months, I was quite young." Of Mrs. Mahaney, he says that he met her after he knew Cain and that she then went by the name of Kittey Gaul. He does not state where she lived, except that he understood she lived with some relations by the name of Gaul in an adjoining parish. He admits testifying upon another occasion that he did not see her at any other place than on the street. He does not say where it was that he first saw Cain or where Cain in fact lived. This witness is very uncertain in his dates, and while his evidence standing alone may throw some doubt as to whether these parties lived in London at the date of the marriage record, it fortifies but very little the proposition that Mrs. Mahaney was born as late as November, 1834.

There appears to be no reason why Mrs. Mahaney, at the time of making the pension applications in 1878 and in 1889, should state her age greater than she thought it was in fact, or place the date of her marriage earlier than it was according to her then understanding. She evidently had no records to guide her. There is in the case no record evidence of her birth. She was a woman of some education, as she wrote her name to the application of 1878. Both of those applications are utterly inconsistent with her age being only fifty-one in November, 1885, and the fact· that those applications, although eleven years apart, and taken under different circumstances, are substantially harmonious in the matter of age, adds materially to the weight that should be given to them in the case.

The four English records are in the same direction, and, assuming the identity to be established, are entitled to great weight. Ordinarily identity of name is *prima facie* evidence of identity of person (*Jackson* v. *Boneham*, 15 Johns. 226; *Jackson* v. *King*, 5 Cow. 237), and a middle letter will be deemed no part of the name. (*Milk* v. *Christie*, 1 Hill, 102; *Van Voorhis* v. *Budd*, 39 Barb. 479; *Arnold* v. *Nat., etc., Bank*, 3 T. & C. 769.) Each case, however, will depend largely upon its own circumstances. In regard to the parties to the marriage record, there may be some doubt as to the identity, not only by reason of the evidence of Cunningham, but by reason of different dates being given of the marriage in the pension applications, one stating it as about in 1842 and the other as in

July, 1844, and before a different clergyman. But as to the birth records a careful consideration of the evidence leaves hardly room for doubt as to the identity. If that be so, and the daughter Ellen was born on March 10, 1844, there is scarcely any ground for believing that her mother was born as late as November 10, 1834.

There is another consideration that has some bearing. There is evidence that the daughter Ellen was married at Oswego in 1862 and that she was then seventeen or eighteen years old. These facts are not disputed, and the plaintiff was apparently in a position to be able to ascertain whether they were true or not. If Ellen was then eighteen, that would place her birth in 1844, as stated in the birth record. It also appears that in a written application by plaintiff for membership in the Flour City Life Association, dated July 29, 1889, and signed by the plaintiff, the age of her mother is stated to be sixty-five. The person who took this application undertakes to say that the age of the mother was not filled in by plaintiff or from her statements, but his evidence on the subject is not very satisfactory. The plaintiff herself does not speak on the subject. She is not sworn as to the age of her mother, nor are either of her two sisters, though they appear to be accessible. No reason appears why they are not called to speak on the subject. The witnesses upon either side who express their opinion as to the age of the deceased do not appear to be her relatives.

In view of the evidence furnished by the pension applications, by the birth records, and as to the marriage and age then of the daughter Ellen and the declaration of the plaintiff, and in view of the necessarily uncertain and inconclusive character of the opinion evidence on the subject of age, we are strongly impressed with the idea that upon the case as it stands before us the verdict is against the weight of the evidence.

It is suggested by the respondent that the statements of the assured were not competent evidence against the plaintiff, and that, therefore, they should not be considered on this appeal. On the contrary, we must assume that they were competent, and if the respondent took any exception to their admission it is not now before us. (*Bridgford* v. *Crocker*, 3 T. & C. 273.) As to such evidence see *Steinhausen* v. *M. A. Assn.* (59 Hun, 336).

It follows that a new trial should be granted upon the ground that the verdict is against the weight of evidence. This will be upon the usual terms in such cases.

HARDIN, P. J.:

Although as a rule we do not disturb a verdict founded upon conflicting evidence (50 N. Y. St. Repr. 519, *Clemans* v. *The Supreme Assembly Royal Society of Good Fellows*), still in a case where so much doubt exists as to the correctness of the finding as is clearly shown by the foregoing opinion, I am disposed to favor another trial when the parties may if possible present more satisfactory evidence upon the vital questions. I, therefore, vote for a new trial.

Judgment and order reversed and a new trial ordered upon the payment by the appellant of the costs of the trial, and without costs of this appeal to either party. In case such costs are not paid within twenty days, then judgment and order affirmed, with costs.