CLARA E. NOLAN, Appellant, *v.* CATHARINE L. F. NOLAN and Others, Respondents, Impleaded with Others.

*Evidence — authentication required of a physician's certificate of death recorded in a foreign State — testimony that a father, still living, stated that his son was dead is inadmissible.*

A certified copy of a physician's certificate of death, on record in the office of the clerk of the County Court of Peoria county, Illinois, is not admissible in evidence on the trial of an action in the State of New York where the certificate does not state, as prescribed by section 957 of the Code of Civil Procedure, that the person certifying the copy had compared it " with the original, and that it is a correct transcript therefrom and of the whole of the original," and does not show that it was made by a "duly commissioned and qualified" presiding justice of the Illinois court, as required by section 906 of the United States Revised Statutes.

The testimony of a witness that the father of a person alleged to be dead had said to the witness that the son was dead, is not admissible on the trial of an action in the State of New York, in the absence of proof that the father, who resided in the State of Illinois, was not alive and available as a witness.

APPEAL by the plaintiff, Clara E. Nolan, from a judgment of the Supreme Court in favor of the defendants Catharine L. F. Nolan and others, entered in the office of the clerk of the county of Kings on the 26th day of April, 1898, upon the dismissal of the complaint at the close of the evidence for the plaintiff, by direction of the court upon a trial at the Kings County Trial Term.

*Andrew F. Van Thun, Jr.,* for the appellant.

*David B. Ogden* [*H. B. Closson* with him on the brief], for the Manufacturers' Trust Company, respondent.

*George J. O'Keefe,* for the respondents Nolan.

WILLARD BARTLETT, J. :

The plaintiff, claiming to be the widow of Thomas Nolan, who died on the 7th day of July, 1897, brought this action for the admeasurement of her dower in certain lands in the city of Brooklyn of which he died seized. At the close of the evidence in her behalf the learned judge at Trial Term dismissed the complaint, and from the judgment entered upon such dismissal the plaintiff appeals.

According to her theory of the case she was married twice, first, to one Elwood Eakins, with whom she lived from March until September, 1892, when he forsook her and went to Peoria, Ill., where it is said that he died in June, 1894, and, secondly, in the winter of 1894–1895, to Thomas Nolan, in whose real property she is now seeking to establish an interest by means of this suit. There is no claim that either marriage was a ceremonial marriage, and, certainly, so far as the plaintiff's relations with Nolan are concerned, the testimony, although standing uncontradicted, as of course it must in a case like this where a nonsuit was ordered, does not necessarily convince the mind that the connection was ever anything but meretricious. However, I am not prepared to say that, if there had been no proof of a former marriage, it would not have been sufficient to present a question which ought to have been submitted to the jury. In some respects the evidence is stronger than was that in the case of *Fagan* v. *Fagan* (11 N. Y. Supp. 748), cited by the respondents. There is proof that Nolan accompanied the plaintiff to the Roman Catholic church on the occasion of the baptism of their child, when the priest asked him what his wife's maiden name was, referring to the plaintiff, and Nolan answered Clara Edsall. There is also other evidence in the case to the effect that Nolan referred to the plaintiff more than once, not merely as Mrs. Nolan, but as his wife. These facts, in addition to the other proof, would, perhaps, sustain a finding to the effect that there was a non-ceremonial marriage between the parties, unless the jury found that the plaintiff, at the time referred to, was incapable of contracting a marriage with Nolan by reason of the fact that she had previously been married to Eakins, who, so far as appeared, was still alive.

The plaintiff's brother, who was called as a witness in her behalf, swore positively that she was married to Eakins in 1892 or 1893, and that there was a baby born of that marriage; that he treated Eakins as his brother-in-law, and that it was generally recognized in the family that Eakins was the husband of the plaintiff and that the child (who was called Harry Eakins) was their child. To show, however, that this prior marriage constituted no obstacle to her alleged subsequent marriage with Nolan, the plaintiff attempted to prove that Eakins died at Peoria in June, 1894, and for that purpose there was offered in evidence a paper purporting to be a certi-

fied copy of a physician's certificate of death, on record in the office of the clerk of the County Court of Peoria county, Illinois. This paper was excluded upon the objection of the respondents, and an exception was duly taken in behalf of the plaintiff. The plaintiff also excepted to the ruling of the trial court excluding evidence that the father of Eakins had told a witness at Peoria in 1894, that Eakins was dead.

There being no other exceptions in the record, not even to the direction of a nonsuit, these two exceptions to the exclusion of evidence raise the only questions which are presented upon this appeal.

If it had been proved that the record of death was made pursuant to the statutes of Illinois, such record would have been competent evidence of the fact of death, under the rules of the common law, and a certified copy thereof would have been admissible, if duly authenticated. (Greenl. Evi. § 484; Whart. Evi. § 653; *Jackson* v. *King*, 5 Cow. 237.) We should assume, I think, that a record of the kind is authorized to be kept by the laws of Illinois, as the plaintiff's counsel offered to prove that fact. Nevertheless, the certified copy was properly excluded for want of the authentication prescribed by our Code of Civil Procedure (§ 957). The person making the certificate must state "that it has been compared by him with the original and that it is a correct transcript therefrom, and of the whole of the original." This certificate contains no statement that any comparison has been made. The objection by defendants' counsel was expressly directed to the insufficiency of the authentication, and it cannot be said that the point was not fairly raised. If, as is contended in behalf of the appellant, the Revised Statutes of the United States control as to the form of authentication in such a case as this, the certificate is still insufficient for not showing that it was made by a "duly commissioned and qualified" presiding justice of the Illinois court. (U. S. R. S. § 906.)

It is equally clear that the trial court was right in refusing to receive testimony that the father of Eakins had said that he was dead. There was no proof or suggestion that the father was not alive and available as a witness to the fact of his son's death, if his son was dead at the time of the trial, and it is well settled that the declaration of a living person as to such a fact as this cannot be

received in lieu of his sworn testimony as a witness in the cause. If the father of Eakins could testify to the death of his son, nothing could be simpler than to take his testimony by commission in Illinois.

Different questions would have arisen in this case if the plaintiff, instead of asserting, had denied that she was married to Eakins. The evidence as to her relations with him permitted conflicting inferences, depending upon how that evidence was viewed; and if the plaintiff had asked to go to the jury upon the proposition that she had never been the wife of Eakins, I am inclined to think it would have been error to refuse the request. When she rested her case, however, the position of the plaintiff was simply this: She had introduced proof tending to show that she had been married to Eakins, but had failed to offer any competent evidence that Eakins had died before her alleged marriage to Nolan. In view of the fact that she insisted upon maintaining that her relation with Eakins was that of marriage, the learned trial judge was right in dismissing the complaint.

All concurred.

Judgment affirmed, with costs.