(111 App. Div. 842)

### LAYTON v. KRAFT et al.

(Supreme Court, Appellate Division, First Department. March 16, 1906.)

**1. EVIDENCE—MATTERS OF PEDIGREE—RECORDS—AUTHENTICATION.**

The records of births and marriages made by a clerk of a church corporation from information furnished by the pastors of the congregations belonging to the corporation are admissible on the issue of pedigree, without proof as to the handwriting of the entries, or as to who was clerk of the corporation at the time they were made, and without showing a rule requiring the keeping of such records.

**2. SAME—ANCIENT DOCUMENTS.**

Records of births and marriages in existence for a century, coming from a proper custody, are ancient documents, and prove themselves.

[Ed. Note.—For cases in point, see vol. 20, Cent. Dig. Evidence, §§ 1614–1618.]

**3. SAME—MATTERS OF PEDIGREE—DECLARATION OF DECEASED MEMBERS OF FAMILY—PRELIMINARY PROOF.**

Where the records of births and marriages made by the clerk of a church corporation show that a third person was a member of the family of plaintiff's grandmother and great grandmother, who are dead, their declarations as to the relationship of the third person and her mother to plaintiff's grandmother, and their declarations as to the death of other members of the family without issue, are admissible on the question of pedigree.

[Ed. Note.—For cases in point, see vol. 20, Cent. Dig. Evidence, § 1152.]

**4. SAME—ERRORS IN RECORDS—EFFECT.**

The records of births made by a clerk of a church corporation contained a mistake as to the maiden name of the mother, it being spelled Bokee, Bookee, Bohea, Bockee. The name of the father was given as Heyer or Hyer. *Held*, that the mistakes did not render the records inadmissible on the issue of pedigree.

Appeal from Trial Term, New York County.

Action by Edward A. Layton against Elizabeth A. Kraft and others. From a judgment for defendants, and from an order denying a motion for a new trial, plaintiff appeals. Reversed.

Argued before O'BRIEN, P. J., and McLAUGHLIN, PATTERSON, LAUGHLIN, and HOUGHTON, JJ.

Rastus S. Ransom, for appellant.

Morris A. Tyng, for respondents.

HOUGHTON, J. Although Anna E. St. John left a will, it is conceded that she died intestate as to the real property described in the complaint. The action is in partition, the plaintiff alleging that he and his sister, the defendant Kraft, are the only heirs at law of the deceased. The relationship claimed is that the plaintiff's grandmother was a sister of the mother of the deceased. The grandmother's name was Maria Hyer, and she married Alexander Tullock, and plaintiff asserts that the mother of the deceased was Hannah Eliza Hyer, who married Francis Bos, and that both were children of Daniel Hyer, who married Catherine Bokee.

The plaintiff was sworn as a witness in his own behalf, and testified that he was born in 1845, and that his mother, Jane B., who had married his father, Edward C. Layton, died when he was 15 years of age; that his grandmother, Maria Tullock, died when he was 17 years of age; that his great grandmother, Catherine Hyer, died when he was 24 years of age; and that during his boyhood they all constituted one family. Both the grandmother and the great grandmother were then widows; the grandfather, Alexander Tullock, and the great grandfather, Daniel Hyer, having died before plaintiff was born. As a boy plaintiff knew Anna E. St. John when her former husband, Charles E. Burton, was living, and he testified that she visited his grandmother and great grandmother, and was known as their niece. These facts were practically all the personal knowledge that the plaintiff had with respect to the identity of his ancestors. That his grandmother was married to Alexander Tullock, and that her maiden name was Maria Hyer, and that his great grandmother was married to Daniel Hyer, and that her maiden name was Catherine Bokee, and that the name of one of his great grandmother's children was Hannah Eliza, and that she married Francis Bos, and that their only child was the deceased, and that the other descendants of Daniel Hyer and his wife, Catherine, died in infancy, or without issue, he learned only by the various declarations of his ancestors, which were, of course, hearsay. All of the family lived in Brooklyn, and the plaintiff was born there.

In order to meet the rule requiring it to appear that the persons making the declarations were members of the family whose relationship was sought to be proved, and to show that the deceased, Anna E. St. John, was a member of that family, plaintiff produced the witness Emma L. J. Schoonmaker, who testified that she knew Mrs. St. John, and lived in her father's family; that her father's name was Francis Bos; that she had heard Mrs. St. John speak of her mother's mother, "Grandmother Hyer," who was dead, and of her uncles and aunts on her

mother's side, the Tullocks, and their children, the Laytons, or Claytons as the witness understood the name, and had heard her say that her mother died in her own infancy.

To further meet the rule as to the declarations, the plaintiff offered in evidence certain letters and receipts addressed to and held by the Tulloch and Layton families and inscriptions on tombstones; and also the record of baptisms of the Collegiate Reformed Church of the city of New York, showing that Maria, a child of Daniel Heyer and Catherine Bokee, was born February 7, and baptized February 28, 1798; and that Hannah Eliza, a child of Daniel Heyer and Catherine Bohea, was born September 13, and baptized October 19, 1801, and that other children of Daniel Heyer (or Hyer) and Catherine Bokee (or Bohea, or Bookee, or Bockee) were baptized at various times to the year 1809, and that Alexander, a child of Alexander Trulloch and Maria Hyer, was born December 2, and baptized December 15, 1819. There was also offered in evidence the record of marriages of said church, showing that on March 10, 1819, Alexander Tulloch and Maria Heyer were married, and that on May 24, 1823, Francis Bos and Hannah Hyer were married, and the register of deaths and burials of said church, showing that Hannah E. Boss was buried January 25, 1825. The Collegiate Reformed Church, first established on Manhattan Island in 1628, is a corporation, and has several congregations. The records of marriages and births are furnished by the various pastors of the congregations to the clerk of the corporation, and the record is made by him in books kept for that purpose. There was no proof as to the handwriting of any of the entries offered in evidence, or as to who was clerk of the church corporation at the time they were made; but they were produced as the records of the church, by its clerk, to whom they came from his predecessor in office. The trial court held that there was not sufficient proof of authenticity of these records to entitle them to be received in evidence. The court also held that without them there was no independent proof that plaintiff's ancestors were members of the family of Anna E. St. John, the deceased, sufficient to entitle declarations of deceased persons to be given in evidence, and on motion struck them from the case, and directed the jury, upon the framed issues, to find a verdict against the plaintiff.

We think the court erred in not receiving the records offered in evidence. The issue presented was one of pedigree simply. Pedigree is the history of family descent, which is transmitted from one generation to another by both oral and written declarations, and, unless proved by hearsay evidence, not competent in general issues, it cannot in most instances be proved at all. Matters of pedigree consist of descent and relationship evidence by declarations of particular facts, such as births, marriages, and deaths. In such cases hearsay evidence of declarations of persons who from their situation were likely to know is admissible when the person making the declarations is dead. Before these declarations can be received in evidence, however, it must appear that the person making them was a member of the family whose descent is sought to be traced. Only slight proof of the relationship will be required, since the relationship of the declarant with the family might be as difficult to prove as the very fact in controversy. Young

v. Shulenberg, 165 N. Y. 388, 59 N. E. 135, 80 Am. St. Rep. 730.; Eisenlord v. Clum, 126 N. Y. 563, 27 N. E. 1024, 12 L. R. A. 836; Fulkerson v. Holmes, 117 U. S. 397, 6 Sup. Ct. 780, 29 L. Ed. 915. Cases of pedigree are peculiar, in that they depend almost exclusively upon presumption, which is a process of probable reasoning from facts established or judicially noticed; and the weight to be given this character of evidence depends upon the facts surrounding each particular case. Identity of name raises a presumption of identity of person, where there is similarity of residence, or trade, or circumstances, or where the name is an unusual one. Lawson on Presumptive Evidence, Rule 57, p. 306. Identity of name is prima facie evidence of identity of person. Young v. Shulenberg, supra; Stebbins v. Duncan, 108 U. S. 32, 47, 2 Sup. Ct. 313, 27 L. Ed. 641; People v. Snyder, 41 N. Y. 397, 403; Hatcher v. Rocheleau, 18 N. Y. 86; Mahaney v. Mutual Reserve Ass'n, 69 Hun, 12, 16, 23 N. Y. Supp. 213; Trebilcox v. McAlpine, 46 Hun, 469, 473; Spotten v. Keeler, 22 Abb. N. C. 105. In a case of identity of name the presumption arises from the improbability that different persons have the same name, and therefore the onus is cast upon the party denying the identity to show that the name relates to a different person. People v. Smith, 45 N. Y. 772, 779. Mere misspelling of a name, where there is not such difference as to make it a distinct name, does not affect the identity of the person. Jackson v. Boneham, 15 Johns. 226, Jackson v. Cody, 9 Cow. 140, 147. From the nature of the case, a question of pedigree forms an exception to the general rule as to the proof of a particular fact by hearsay, reputation, or tradition; and, in addition to the declarations of deceased persons who were likely to know, unauthenticated facts and entries, made presumably with no motive to deceive—such as an entry in a family Bible, an inscription on a tombstone, a pedigree hung up in a family mansion, and recitals in deeds—are competent evidence upon that issue. Jackson v. Cooley, 8 Johns. 128, 131; Young v. Shulenberg, supra.

Notwithstanding the fact that proof of handwriting was not made, and that there was no evidence that the entries were in the handwriting of one who was then clerk of the Collegiate Reformed Church of the city of New York, or that there was a rule of the church requiring such records to be kept, we think the records of marriages and baptisms and deaths kept by that church were competent evidence, and should have been received upon the trial. These same records were received in evidence and held proper in Jackson v. King, 5 Cow. 237, 15 Am. Dec. 468, and were there considered of such a public nature that an exemplified copy might be used. In Jacobi v. Order of Germania, 73 Hun, 602, 26 N. Y. Supp. 318, and in Hartshorn v. Metropolitan Life Ins. Co., 55 App. Div. 471, 67 N. Y. Supp. 13, records of baptism kept by the pastor of a church were held competent for the purpose of showing, not when the person was born, but when he was baptized, which must have been after his birth. These authorities are said not to be applicable to the present question, because it was there shown that the records were kept by the pastors of the churches, and in the present case the record was kept only by the clerk. Nevertheless, they are records of the church, and in its custody, preserved by it, and presumably made by some one in authority. The

.church, as a corporation, had several congregations, in charge of different pastors. Each pastor might have kept a record of such marriage ceremonies as he performed, and such baptismal services as he held. If this had been done, doubtless no question would have been made as to the competency of the record. We are of the opinion that that competency with respect to pedigree was not destroyed by the fact that one general record was kept by the clerk of the church corporation of the acts of this character of the several pastors of the various congregations. There is no reason to doubt the truthfulness of the records, or to assume that they were made from any improper motive. Besides, they were ancient documents, and had been in existence for a century. They came from the custody which must be deemed proper, and that proved themselves. The general rule is that an ancient record or document, if it comes from a custody which the court deems proper, and is itself free from any indication of fraud or invalidity, proves itself. Matter of Webster, 106 App. Div. 360, 94 N. Y. Supp. 1050. Had the records been received in evidence, they would have tended to show that Anna E. St. John was a member of the family of plaintiff's grandmother and great grandmother, who were dead, and their declarations as to the relationship of Anna and her mother to the plaintiff's grandmother would have been proper, as well as their declarations as to the decease of other members of the family without issue. If the view that these records should' have been received in evidence is correct, inasmuch as a new trial must be had, it is unnecessary to pass upon the question whether or not the plaintiff produced other evidence sufficient to render these declarations competent, for the records can then be introduced, and they will themselves furnish prima facie proof of common ancestry sufficient to make those declarations admissible.

Little significance, it seems to us, should be attached to the fact that Catherine Bokee's name is spelled in different ways. Daniel Hyer or Heyer is the father mentioned throughout the record, and Catherine is the mother named. That a mistake was made with respect to her maiden name of course raises a question of fact as to whether or not she is the same person, but not so serious a one as to prevent the introduction of the record in evidence.

Our conclusion is that the judgment and order should be reversed, and a new trial granted, with costs to the appellant to abide the event. All concur.