COLEMAN v. BRUCH.

(Supreme Court, Appellate Division, First Department.   June 11, 1909.)

1. EVIDENCE (§ 372*)—ANCIENT RECORDS.

   Affidavits, verified in 1855 by the grantor's attorney, by the agent who made the sale, and by the grantee, stated that the grantor had intended to convey the property to one "Jayne," but through a clerical error his name was mispelled "June," and that the mistake was corrected by erasing the latter and substituting the former name and again recording the deed on April 10, 1856, which affidavits were produced by an attorney, who was a son of an attorney who had acted for a subsequent owner of the property, and were attached to his abstract of title in the handwriting of his attorney, from whom the son who produced them stated that he had received them before his death, about 1890.   Held, that the affidavits were admissible as ancient documents to show the mistake in the deed and its subsequent attempted correction.

   [Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 1613–1627; Dec. Dig. § 372.*]

2. NAMES (§ 16*)—IDEM SONANS.

   The name "June," as stating the grantee in a deed, is not idem sonans with "Jayne."

   [Ed. Note.—For other cases, see Names, Cent. Dig. §§ 12–14; Dec. Dig. § 16.*]

3. VENDOR AND PURCHASER (§ 130*)—MARKETABLE TITLE.

   A conveyance was made to "June" as grantee, and thereafter the same deed, with the date of acknowledgment unchanged, but with the grantee's name erased and the name "Jayne" written in its place, was again recorded, and the records showed an unbroken line of title from the latter for over 50 years; and affidavits, verified at the time the name was substituted by the grantor's attorney, by the agent who made the sale, and by the grantee, stated that the latter's name was incorrectly inserted in the deed first recorded and that the mistake was corrected by the change of the name and again recording the deed; the affidavits being produced by the son of the grantee's attorney, who had obtained then from his father.   Held, that the title to the property was marketable.

   [Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 245, 246; Dec. Dig. § 130.*]

4. APPEAL AND ERROR (§ 1175*)—DISPOSITION—REVERSAL AND RENDITION.

   Where plaintiff could not obtain any advantage by a new trial, on the reversal of a judgment for him, the complaint will be dismissed.

   [Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4573–4587; Dec. Dig. § 1175.*]

Appeal from Trial Term, New York County.

Action by Aaron Coleman against Anna Bruch.   From a judgment for plaintiff, defendant appeals.   Reversed, and complaint dismissed.

Argued before INGRAHAM, McLAUGHLIN, HOUGHTON, CLARKE, and SCOTT, JJ.

Frederic Cyrus Leubuscher, for appellant.

Julius B. Baer, for respondent.

McLAUGHLIN, J.   The plaintiff is the assignee of one Gross, to whom the defendant contracted to convey certain premises in the city of New York, known as No. 116 West 133d street.   At the time for closing the contract the plaintiff refused to complete on the ground

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

that the title was defective, and this action was brought to impress a lien upon the premises in the sum of $500, the amount paid on the signing of the contract, and to recover $275 expenses incurred in examining the title. The plaintiff had judgment for the relief sought, and the defendant appeals, claiming that she was able to convey a good title.

The plaintiff's refusal to take the title was based upon the fact that on September 1, 1855, one George T. Maxwell and wife conveyed the premises to one Thomas E. June, by deed recorded two days later, and there is no record of any conveyance of the property by June. The defendant sought to avoid this defect in the record title by showing that on the 10th of April, 1856, this deed, with the exception that the grantee named was Thomas E. Jayne, instead of Thomas E. June, was again recorded, with a memorandum on the deed, signed by the subscribing witness, who was also the officer who took the acknowledgment, stating that the word "Jayne" had been written over an erasure before execution. From Thomas E. Jayne there is a perfect chain of title to the defendant. The defendant also produced three affidavits, verified either on the 10th or 11th of February, 1865, all to the effect that Maxwell had intended to convey to Jayne, but that the latter's name had, through a clerical error, been misspelled June, which it was attempted to correct by erasing the word "June" and substituting "Jayne," and then having the deed again recorded as stated above. These affidavits were by one Roe, who was the attorney for Maxwell, the grantor in the transaction, by one Hammond, the agent who negotiated the sale, and by Jayne. They were produced by one Needham, who testified that he had received them from his father, who died about 1890, and who had acted as attorney for one James R. Floyd. Floyd took title to the property by deed dated February 21, 1865, and these affidavits were at the end of an abstract of Floyd's title, in the handwriting of Needham, the witness' father. The witness was an attorney, and testified that he first saw the abstract in his father's office in 1884 or 1885.

It is strenuously urged that these affidavits were not properly proven and not admissible in evidence; but I am of the opinion that they were admissible as ancient documents. The general rule is that an ancient record or document, which comes from the custody of a person which the court deems proper and is itself free from any indications of fraud or invalidity, proves itself. Layton v. Kraft, 111 App. Div. 842, 98 N. Y. Supp. 72; Matter of Webster, 106 App. Div. 360, 94 N. Y. Supp. 1050, affirmed 186 N. Y. 536, 78 N. E. 1114; Dodge v. Gallatin, 130 N. Y. 117, 29 N. E. 107, and cases there cited. These affidavits purported to have been made upwards of 40 years ago and a few days before Floyd took title to the premises. They were found, where they might naturally have been expected to be, in the possession of Floyd's attorney, with the abstract and muniment of title. Under these circumstances I think they were admissible in evidence without proof other than that which was made.

The plaintiff's attorney admitted that defendant had given him copies of these affidavits, and he testified:

"I did not make any point that the original affidavits were not in my possession. * * * I make no point of the fact that the originals were not produced."

That being so, I do not think that the plaintiff was justified in refusing to take title, especially in view of the fact that it was shown that after the conveyance by Maxwell no adverse claim had ever been made, and it was stipulated that the building and fence on the premises had been there continuously since the year 1882.

The case in many respects is quite similar to that of Hellreigel v. Manning, 97 N. Y. 56, where the records showed a deed to Electa Wilds in 1861 and a conveyance of the same property in 1867 by Electa Wilder, under which plaintiff had acquired title. The action was brought to compel the defendant to specifically perform a contract for the purchase of the land, and Earl, J., writing for the court, said:

"It is probably true that, looking at the records alone, there was such a defect in plaintiff's title that he could not compel the defendant to accept it. The two names are so dissimilar that they do not present a case of idem sonans. But yet the inference from the records is quite strong that the two names stand for the same person. * * * If the two names do not stand for the same person, we have the case of an entire stranger to the title, with a name quite similar, conveying the title and passing it on through the chain to the plaintiff. But if we add to all this what must, in the absence of any proof by the defendant to the contrary, be presumed, that the title was held and the land occupied without dispute under the deed from Electa Wilder from April, 1867, to the trial of this action in 1881, the inference that the two names stand for the same person becomes almost conclusive."

The judgment for specific performance was consequently affirmed. It is true that in the case cited there was more direct evidence that "Wilds" and "Wilder" were the same person; but in other respects the present case is even more favorable to the defendant. The difference between the names "June" and "Jayne" is such that I do not think the doctrine of idem sonans can be applied. But here, after the deed to June, the same deed, with the date of the acknowledgment unchanged, but with the word "June" erased and the word "Jayne" written in its place, was again recorded. The same day a conveyance of the property by Jayne and his wife was recorded, and from that time to the present, over 50 years, so far as appears, the title has not been questioned. Upon such facts there can be no reasonable doubt that "Jayne" and "June" were the same person, and that the title was a marketable one (Freedman v. Oppenheim, 187 N. Y. 101, 79 N. E. 841) irrespective of the affidavits. When they are considered, the case, it seems to me, is beyond question.

The learned justice at Trial Term was of the opinion that the defendant had established a good title to the property, but it was not marketable on the day fixed for closing, and for that reason gave judgment for the plaintiff, because neither party asked for specific performance. I am of the opinion that the evidence showed that the defendant did have a marketable title on the day set for closing, and the judgment must therefore be reversed, with costs; and, since the plaintiff has nothing to gain by a new trial, judgment for the defendant should be granted, dismissing the complaint. All concur.