Bockes, J.
We are of the opinion that a new trial must be granted on the ground that the verdict is manifestly against the evidence; and for errors in the rulings of the-court as well. Esmay held the position of a judgment creditor of Swan when the latter made sale of his property to his daughter the plaintiff; and might, therefore, through the sheriff, assail its integrity in this action.
*108 The sale was without any consideration then paid, or ■secured to be paid, and was of property of the value of about $7000, according to the plaintiff’s estimate, who, without ■the property sold her, was wholly irresponsible. The sale, too, was of property of which she stood in no need, and it was thereafter employed by her, as it had been before by her father, in a business unusual for a female to engage in, and ■singularly inappropriate to be conducted by such a one for profit. There was no real actual change of possession on the ■sale or afterwards, and the property was employed thereafter as it had been before at the same place and in all respects under like circumstances. As above stated the sale was without consideration paid, and without security for payment in future, and it was absolute in terms, and irrespective of the property transferred. Swan was insolvent. Although present at the trial, Swan was not sworn as a witness. On the plaintiff’s testimony, the transfer was little else than naked gift. As a bona fide sale, which ■should bar the claims of Swan’s creditors to the property and its avails, she makes it quite unsatisfactory. On her first ■examination in supplementary proceedings, she testified that her father was to give her all he had if she took care of him as long as he lived. He was then very ill, and she considered him liable to die at any time. Further, that she paid one dollar of her husband’s money for the things, and that was all she paid. And again, on her first examination, the question was ■asked her :
“ Q. What was said at the time the writing was drawn 2
“ A. He said he would give me all he had, if I would take ■care of him during his life and stay here, that he did not want to go elsewhere, it had always been his home. He told me he considered the house was mortgaged for more than it was worth ; then he specified the household furniture, and horses, and wagons, and all that there was; he said everything, and I considered it mine. I told him I did not want him to die, I would rather he would live it all up. I asked if my half-brother could claim anything ; he said no, if he *109 gave it to me in this way. I told him I made a sacrifice incoming down here and leaving my home ; he said he wanted me to have all he had, as he had no one else to give-it to. That was everything that was said.”
And again she testified that she had several conversations with her father upon the subject prior to December, and that in those conversations he said he would give her the property if she would come and take care of him, “ on the understanding that he was to give me the bill of saleand again :
“ Q. 1 ask you to state what was said and done at the time of the execution of this-bill of sale?
“ A. The arrangement was talked over of my coming home. The bill of sale was drawn up as security to me for giving up my home in Lansingburg and going there.
“ Q. Was that the consideration of the bill of sale?
“A. Yes.
“ Q. That was the only consideration ?
“ A. A dollar. I can’t state more definitely as to what was said and done at the time this bill of sale was executed.”
There was a manifest effort on her part on the trial to find and make out a consideration. At most, however, it was but trifling compared with the property transferred and it was altogether of a suspicions and unsatisfactory character. So it has been repeatedly held that it was fraudulent as to creditors of a vendor, for one to receive from him a transfer of all his property on a grossly inadequate-consideration. It may be that there was here no actual fraudulent intent in the minds of the parties. It may be that the transfer was made under an apprehension of Swan’s speedy decease, to put his daughter in immediate-control of the property, instead of giving it to her by will.
The transaction, nevertheless, would be in law fraudulent as to Swan’s creditors. It is urged that the plaintiff as part consideration had paid certain debts of her father, and had made advances to and for him, relying upon the sale *110 and transfer to her, and that having done so, she may hold the property as her security and indemnity therefor. . To this it may be answered (1) this would not make the transaction conclusive against the claims of Swan’s creditors; and (2) it appears that she holds abundant property yet under the sale, besides this in controversy, to satisfy such rights and equities in her behalf. In every aspect of the case suggested to our minds, the verdict seems entirely unsatisfactory. If a debtor may dispose of his property in the way it was here done, .under ■ the facts and circumstances here shown to exist, and thus put his creditors at defiance, the law is of little avail to the latter by way of affording them protection against injustice. The jury should, we think, have found on the proof submitted to them, for the defendant. The transaction was, we consider, plainly fraudulent and ■void as against Swan’s creditors, and the verdict should have been to that effect.
The court was not in error in excluding proof of statements made by Swan. Such statements were but hearsay. If important as evidence Swan should have been called to prove the facts. This ruling was right.
The court should not have excluded proof of the judgment in favor of French and Nicholson against Swan, on the ground that the defendant therein was not shown to be Swan, the plaintiff’s vendor. Identity of names is presumptive evidence of identity of persons. Therefore, if of importance in the case, the proof should have been admitted. But as the case was made the ruling could hardly have worked harm to the defendant.
The court was requested to instruct the jury that if they believed that the necessary consequence of the. alleged transfer was to defraud the creditors of Swan, then the transaction itself was evidence of fraud. It is understood that the import of the word “ believed ” as here used, is the same as “ should find ”—if so, this instruction should have been given (Babcock v. Eckler, 24 N. Y. 623, 632).
The defendant also requested the court to. charge that' *111 concurrent possession of the plaintiff and Swan was not such a change of possession as the law required. This request was pertinent to the case on the proof and the instruction requested should have been given.
The following instructions were also asked to be given •the jury, which were refused :
“ Defendant’s counsel then requested the court to charge the jury that the actual and continued change of possession •required by the statute, means an open public change of possession, which is to continue and to be manifested by ■outward and visible signs, such as render it evident that the possession of Swan had changed.
“ The Court. I refuse to charge on that subject other than I have charged.
" Exception by defendant.
“Defendant’s counsel asked the court to charge the jury that if they believe that the alleged transfer was made in trust for the use or benefit of Swan, or that he secured some benefit to himself at the expense of his' creditors, that it is fraudulent and void as against his creditors.
“ The Court. . I have already charged on that subject as fully as I propose to charge.
“ Exception by defendant.
“ Defendant’s counsel then asked the court to charge the jury that a gift or voluntary transfer of property, by a debt- or, when sufficient property is not retained to pay his debts, is fraudulent and void, as against his creditors.
“The Court. I will refuse that. Exception by. defendant.
“ Defendant’s counsel asked the court to charge the jury that the assignee, Peter Esmay, of the Mary Keenan judgment stands in the same position, and is to be regarded as an existing creditor at the time of the alleged transfer.
“ Request refused. Exception by defendant.”
These requests should have been complied with. The case made on the evidence made them pertinent. As to the third and fourth request next above given, it does not *112 appear that the court had in the general charge answered them.
Judgment reversed; new trial granted; costs to abide-the event.
Note on Instructions to the Jury in a Creditor’s Suit.
In addition to the rulings in the text on instructions to the jury in a creditor’s suit the following cases are instructive:
Roeber v. Bowe, 26 Hun, 554. Action to recover damages against a sheriff for an alleged unlawful taking of' goods to satisfy a judgment recovered against plaintiff’s vendor. The defendant claimed that the title to the goods was, at the time of taking, in the plaintiff’s vendor.
Upon the trial and at the conclusion of the judge’s charge, the court was requested to instruct the jury that a purchaser for full value was not protected on buying goods sold to hinder, delay or defraud creditors, if the purchaser had notice of the intent on the part of the seller; which the court refused to do as requested, and modified it by introducing the words “and participated in such intent/’ Held, that, the court erred in refusing to charge as requested.
Judgment for plaintiff reversed.
Weld v. Reilly, 48 Super. Ct. (J. & S.) 531.
The plaintiff claimed title to certain books by gift from her husband, and sued the defendant for unlawfully taking the books, as sheriff, under an execution issued upon a judgment against the plaintiff’s husband. The defendant claimed that the gift was fraudulent as to the husband’s creditors.
The court had, at defendant’s request, already charged, “ That if the evidence showed that when the transfer from the husband to the wife was made, he was indebted in a sum exceeding the value of the books so transferred, and if such debts remain unpaid to this day, such transfers are fraudulent and void against creditors existing at that time who are still unpaid, and equally void against future creditors, including the judgment creditor in this case;’’ after which the following charge was made: “The mere fact that a debt then existing- *113 remains still unpaid, is not sufficient of itself. If the jury find that he was actually insolvent at that time then the transfer was void.” To this latter charge the defendant excepted. Held, that the debt referred to in the latter charge was not the same kind of debt referred to in the request which had been previously charged, but it was to a debt not to an amount greater than the value of the books.
And the court say: “Of such a debt, which was of less value, it was true that its mere existence did not make the transfer fraudulent, but was evidence as to insolvency; and if the donor were insolvent, then the gift was fraudulent.”
Remington v. Fisher, 52 Super. Ct. (J. & S.) 527.
Action for the wrongful taking of goods, title to which was claimed by the plaintiff under a purchase at a sheriff’s-sale, under an execution against the firm of E. & M. The defendants, subsequent to the plaintiff’s purchase, took the goods under an attachment against E. & M., and sought to justify the taking on the ground that plaintiff’s purchase was fraudulent as against them. The goods were left by plaintiff after his purchase thereof with M. of E. & M., as plaintiff’s agent, and the question of a change of possession was submitted to the jury, who were instructed that the burden of proof in the case depended entirely upon how they would determine the question of change of possession. Held,, affirming a judgment entered upon a verdict in favor of the plaintiff, that as the uncontradicted evidence showed payment of a valuable consideration, this instruction, in view of what was said by the learned judges of the court of appeals who delivered the opinions in Starin v. Kelly, 88 N. Y. 418, and Murphy v. Briggs, 89 Id. 446, was probably more favorable to the defendants than it should have have been, and at any rate it was the most they could claim.