### MOSS v. PRESIDENT & DIRECTORS OF MANHATTAN CO.

(Supreme Court, Appellate Division, Second Department. March 6, 1900.)

CORPORATIONS—STOCKHOLDERS—IDENTITY—EVIDENCE.

In 1833, G. transferred stock in defendant's bank to M., but, except the entry of his name in the stock ledger, there was nothing to show his identity. The dividends credited to the stock since 1833 were never claimed till plaintiff, in 1898, as administrator of a party bearing the same name, commenced an action to recover them. Plaintiff's intestate, who died in 1857, came to New York in 1833, was naturalized in 1835, and his name (the only one of that name) appeared in the city directory from 1835 to 1854, giving his occupations and business addresses in localities near defendant's bank. Since 1835 defendants published annually in the city newspapers dividends unclaimed for the previous two years. There was no proof that plaintiff's intestate ever had any dealings with the bank, or with G., the assignor of the stock, or that he was ever in possession of the certificate, or that he ever informed any member of his family that he owned the stock. *Held,* the evidence was insufficient to establish the identity of plaintiff's intestate as the owner of the stock.

Appeal from judgment on report of referee.

Action by Charles Moss, as administrator of Henry Moss, deceased, against the President and Directors of the Manhattan Company. From a judgment dismissing the complaint, plaintiff appeals. Affirmed.

Argued before GOODRICH, P. J., and BARTLETT, HATCH, WOODWARD, and HIRSCHBERG, JJ.

William H. Osborne (Joseph P. Osborne, on the brief), for appellant.

Charles E. Rushmore, for respondent.

HIRSCHBERG, J. This action is brought by the plaintiff, as administrator of Henry Moss, late of the city of New York, deceased, for the purpose of establishing the title of said deceased to 16 shares of the capital stock of the bank of the defendant, the President and Directors of the Manhattan Company, which were issued in the name of Henry Moss, on the 28th day of March, 1833. The referee found the proof of the identity of the deceased with the stockholder to be insufficient, and the correctness of this finding is the only question presented for review. The stock appears to have been transferred to Henry Moss from one A. N. Gifford. The stock-certificate book, showing the name of Henry Moss as a stockholder, is not in existence. Mr. Gifford appears on the books of the bank to have been a resident of the city of New York at the time, but the residence of Mr. Moss does not appear. The transfer is evidenced by accounts in the stock ledger, under the names of Gifford and Moss, respectively. The books of the bank do not contain anything indicative of the business of Henry Moss, the stockholder, or anything beyond his name which may serve in any way to identify him, and his name appears only in the stock-ledger account. In the year 1833 the bank did not issue formal certificates of stock, but issued a paper about six inches long by four inches wide, which contained a receipt to the effect that the holder named therein was entitled to a given number of shares of the stock of the corporation. Each share is of the par value of $50, and dividends have been declared by the bank, and credited to this stock annually or semiannually since January, 1833, with the exception of the years 1840 to 1845, inclusive, and the year 1847, amounting in all to 119 dividends, and aggregating over $4,000. Henry Moss, the plaintiff's intestate, died August 25, 1857, at which date 34 of these dividends had been declared, amounting to the sum of $1,196. No dividend was ever claimed by Mr. Moss or on his behalf, nor by his estate, until the commencement of this suit, in June, 1898. The defendant company has annually advertised in the public newspapers of the city dividends unclaimed for the previous two years, as required by law, the first publication, relating to the dividends in question, being under date of September 1, 1835. In such publication the column devoted to the residence of the stockholder is left blank opposite the name of Henry Moss, indicating that his residence was not then known to the officers of the

bank, and the same blank space appears to have been left in all the subsequent publications. Notice of stockholders' meetings was also published annually in two of the city newspapers. The plaintiff's intestate came to this country from England in the year 1831 or 1832. He brought with him his wife and six children. He settled in the city of New York, and his name appears in the directory for 1835–36, and continues down to the issue for 1853–54, giving his different occupations and residences in the city and places of business in Cherry street, Cedar street, Nassau street, Maiden Lane, and other localities in easy access to the defendant's banking house. No other Henry Moss appears in the city directory during this period. In the year 1835 he declared his intention to become a citizen of the United States, and was naturalized three years later, being the only individual named Henry Moss who was naturalized in the city during the 10 years then preceding. When he died he left his widow and nine children, but no estate, and his widow was supported by the children, or some of them, for 25 years, during which she survived her husband. No administration was taken upon the estate of Henry Moss until letters were issued to the plaintiff on the 2d day of June, 1898, obtained for the purpose of bringing this action. The receipt for the 16 shares of stock was not produced upon the trial, nor its absence accounted for, nor was any evidence given tending to show that it was ever in the possession of the intestate, or that he ever claimed to be a stockholder in the defendant's bank, or stated to, or in the hearing of, his wife or any other member of his family that he had any pecuniary interest in that institution. There was no evidence that he was acquainted in any way with A. N. Gifford, and, of course, no evidence that they ever had any business dealings.

From this statement of the facts, it would seem sufficiently apparent that the learned referee arrived at the only legitimate conclusion on the issue presented. It is true that for some purposes and in some cases identity of name is sufficient to establish identity of person, but I find no authority for the proposition that such similarity is alone sufficient where the burden rests upon a claimant of establishing his rights to property. Had the plaintiff's intestate, in his lifetime, sued the bank to recover the dividends, he could not have maintained the action merely by proof of his residence and name. Yet that case would be stronger than the one made by his estate, as it would be fortified by the fact of his actually making a claim to ownership, while the estate is subjected to the adverse presumption arising from the fact that he never did make a claim in his lifetime. In none of the numerous cases cited by the appellant are the facts at all analogous. They are chiefly cases in which the identity of name establishes a subsequent grantor as the prior grantee of the same right or property. But in an action on a lost note, bond, or other obligation, or a missing certificate of membership in a corporation, the presumption that the genuine creditor or stockholder still possesses the evidence of his claim or title would be stronger than the presumption resting upon identity in name, accompanied by no explanation of the absence

of the document.   The rule is stated in Lawson, Pres. Ev. (9th Ed.), at page 317, as follows:  "Where an interest is claimed, mere identity of name to the person entitled is insufficient."   In the case cited in support of the rule (Mooers v. Bunker, 29 N. H. 420), the action was assumpsit under a statute to recover the value of timber cut and carried away from real estate.   The court said (page 431):

"The first thing to be proved is that the plaintiff is seised of the share he claims of the real estate.   If his name is John Smith or John Jones, or any of the common and frequently recurring names, it would be at once apparent that to prove a John Smith to be entitled is but one step to prove the plaintiff's title.   The next is to prove that he is the same person.   In the nature of things, the same question must arise in every case.   It is not often a matter of controversy whether the identity of the plaintiff is established, because the doubt, if any arises, can generally be readily removed.   But, if a question is made, a jury is not at liberty to presume that a person even of so peculiar a name as Timothy Mooers is the same person as the man of the same name who is shown to be entitled to a particular estate."

In Sitler v. Gehr, 105 Pa. St. 577, it was held that the ordinary rule that identity of name is prima facie evidence of identity of person does not apply where the transaction is remote, and that the identity must be accompanied by other circumstances of time and place, before value can be attached to it as affecting rights of property.

The cases on which the appellant places his chief reliance are neither controlling nor conclusive.   Tillotson v. Webber (Mich.) 55 N. W. 837, was an action of ejectment.   The court found sufficient testimony in circumstance of place and custom to establish the identity of a grantee with the next subsequent grantor of the same name, conveying the same premises.   It was a question of tracing titles, as it was also in Stebbins v. Duncan, 108 U. S. 32, 2 Sup. Ct. 313, 27 L. Ed. 641, cited by the appellant.   In the last-named case there was also other evidence.   The patent and the deed bore date the same day, and the patent was recited in hæc verba in the deed.   The court said (page 47, 108 U. S., page 323, 2 Sup. Ct., and page 647, 27 L. Ed.):  "These circumstances tend strongly to show that the party by whom the deed was executed must have had possession of the patent."   Many of the other cases cited are cases of the identity of grantor and grantee, and were decided on the principle of the prima facie presumption of the identity of a grantor with a prior grantee, where the property conveyed is similarly described, and which rule of presumption is founded on the experience of its general correctness and its convenience.   In Spotten v. Keeler, 22 Abb. N. C. 105, Swan, whose identity was disputed, was present at the trial, and did not deny as a witness that he was the judgment debtor.   The court held that a judgment against him in name was prima facie evidence of indebtedness, as against his vendee of personal property, in an action brought by the latter against the sheriff for selling it under an execution.   In People v. Smith, 45 N. Y. 772, it was held that, in proceedings under a statute authorizing the issuing of municipal bonds to aid in the construction of a railroad, it was prima facie evidence that the persons were the same, where the signatures to the petition were identical with the

names upon the tax roll. It would not be profitable to devote time to the analysis of the many other cases cited. Their general inapplicability has been sufficiently suggested.

But, conceding that the plaintiff made out a prima facie case in the first instance, the presumption has been completely overborne. The presumption arising from the rule of identity in name may be repelled. McAdam, Names, p. 19, § 11, and cases cited. The absence of proof that plaintiff's intestate ever had any dealings or connection with the bank, or with Mr. Gifford, who transferred the stock; the absence of the certificate, and of proof that the certificate was ever in his possession; the fact that he lived in New York for nearly a quarter of a century after the transfer, and a large part of that time in the vicinity of the bank, without drawing or claiming a single dividend, although dividends were continually declared and continually advertised; the fact that in all that period he never informed any member of his family that he owned stock in the bank, although, if he did own it, it was apparently his sole investment; the fact that he died practically destitute, with a large family, and a widow unprovided for, at a time when the unclaimed dividends and the value of the stock together amounted to a considerable sum; and the fact that the members of his family permitted more than 40 additional years to pass without making any claim,—are all circumstances which strongly, if not conclusively, repel the slight presumption arising from the similarity of name. The case is not like an unclaimed deposit in a savings bank, which for a considerable period will draw compound interest. The dividends left here involved a total loss of earnings, to which a business man of slender means and a large family would be unlikely to submit. It is conceded, of course, that some one named Henry Moss, whose residence was and is unknown, has left these dividends idle these many years, but we are unable to say that the transaction may not be explained by absence or other circumstances which time may yet disclose. We are not called upon to clear up the mystery. It is sufficient to support the judgment appealed from that a judgment in favor of the plaintiff, and its payment, would be no bar in favor of the defendant in case the real stockholder, or his representatives or assignee, should appear hereafter, with ample proof of right, and that all the surroundings of the transaction, as developed in the evidence, are irreconcilable and inconsistent with the theory that plaintiff's intestate and the stockholder are the same person, notwithstanding the similarity of their names.

The judgment should be affirmed, with costs. All concur.