perior Ct., 92 Cal. 239, 28 Pac. 341; Terrill v. Superior Court of Santa Clara County (Cal.) 60 Pac. 38.

O'BRIEN, P. J., concurs in result.

---

### In re WEBSTER et al.

(Supreme Court, Appellate Division, Third Department. June 29, 1905.)

1. EVIDENCE—ANCIENT DOCUMENTS.

The record of proceedings before a board of supervisors which took place 85 years before a hearing involving the same records from the books of a town clerk and from the minute book of a town certified under dates about 70 and 85 years, respectively, before the hearing, and commissioners' maps in partition proceedings indorsed under a date 100 years before the hearing, are ancient documents, within the rule that such documents, when in themselves free of any indication of fraud or any invalidity, and if they come from the proper custody, the court deems proper proof themselves.

[Ed. Note.—For cases in point, see vol. 20, Cent. Dig. Evidence, §§ 1613–1627.]

2. SAME—SOURCE OF PRODUCTION—COUNTY RECORDS.

Although the county law (Laws 1892, p. 1756, c. 686, § 50) requires clerks of boards of supervisors to keep records of the proceedings of the board and to keep its books and papers open to public inspection, the county clerk's office, which has a fixed location for the preservation of records, whereas the location of the office of the clerk of the board follows the individual who happens to hold the office, is the reasonable and proper place for the custody of ancient records of proceedings of the board of supervisors, such as to give credence to genuineness in favor of records coming from that office.

3. SAME—SECONDARY EVIDENCE—CERTIFIED COPIES.

A record from the books of a town clerk, which is certified by the clerk "to be a true copy from the original report" of commissioners appointed by the county board of supervisors to settle questions relating to the maintenance of bridges, is secondary evidence.

4. SAME—PRESUMPTION—PERFORMANCE OF OFFICIAL DUTY.

It is presumed that commissioners appointed under Laws 1818, p. 77, c. 91, § 5, to equalize the burden resting on various towns in the support of bridges, performed the duty imposed by such section of returning their proceedings to the court of common pleas.

5. SAME—SECONDARY EVIDENCE—FOUNDATION—LOSS OF ORIGINAL.

Where the legal presumption that commissioners appointed under Laws 1818, p. 76, c. 91, to adjust the burden of maintaining bridges between certain towns, reported to the court as required by the act, is strengthened by certificates of the county and town clerks that they did make and

file such report, it was proper, on the loss of the report being shown, to receive secondary evidence of its existence and its contents.

6. SAME—LOCATION OF OBJECTS—MAPS.

A map made by commissioners in partition proceedings is admissible in evidence to identify the location of a bridge shown thereon.

Appeal from Special Term, Columbia County.

Application under section 136 of the highway law (Laws 1890, p. 1202, c. 568) by Constant Webster and others, as commissioners of highways of the town of Chatham, for an order requiring Philip Purcell, as commissioner of highways of the town of Kinderhook, to unite with the commissioners of Chatham in repairing or replacing a bridge over the stream dividing the towns of Chatham and Kinderhook. From an order confirming the report of a referee appointed to take testimony and report the same together with his opinion thereon, applicants appeal. Affirmed.

See 78 N. Y. Supp. 1101.

The town of Kinderhook claims that because of the provisions of chapter 91, p. 76, of the Laws of 1818, erecting the town of Ghent, and certain proceedings had thereunder, the expense of maintaining the bridge in question is chargeable upon the towns of Chatham and Ghent, and that no portion thereof is chargeable against the town of Kinderhook. It is conceded that the bridge is very much out of repair, dangerous to public travel, and needs repairing or rebuilding. The matter was referred to a referee to take testimony with regard to the liability of the town of Kinderhook to join with the town of Chatham in repairing or rebuilding the bridge. He took such testimony, and reported that the town of Ghent was charged with the maintenance of that portion of the bridge with which the town of Kinderhook is sought to be charged, that the town of Kinderhook is exonerated from any cost or expense for the maintenance of the same, that there is no liability on the part of that town to unite with the town of Chatham in repairing or rebuilding the bridge, and that the application for an order requiring it so to do should be denied. From the order confirming the report of the referee this appeal is taken.

Argued before PARKER, P. J., and SMITH, CHASE, CHESTER, and HOUGHTON, JJ.

Sanford W. Smith, for appellants.

Frank S. Becker, for respondents.

CHESTER, J. By chapter 91, p. 76, of the Laws of 1818, the town of Ghent was formed from parts of the towns of Claverack, Kinderhook, and Chatham. The fifth section (page 77) of that chapter contained the following provision:

"And be it further enacted that it shall be the duty of the board of supervisors of the county of Columbia at their next session to appoint three respectable freeholders being respectively inhabitants of the said county not residing in either of the said towns of Kinderhook, Claverack and Chatham, or the town hereby erected, whose duty it shall be to examine into the number, state and extent of the bridges within the territory now constituting the towns of Chatham, Claverack and Kinderhook, and if they shall be of opinion that the burthens of the said towns and the town hereby created arising from the support of the said bridges are unequal that then in such case it shall be the duty of the commissioners to equalize the said bridges among the said towns, particularly designating the same and by which town they are thereafter to be supported, and to make return of their proceedings at the next court of common pleas of the said county after the same shall have been completed, who may at the instance of either party in their judgment re-examine

the same and affirm or alter the decision of the said commissioners, and the decision of the said court shall be final and conclusive; and that it shall be the duty of the several towns to support the said bridges with the support of which they shall be thus charged: provided, that no judge residing in either of the towns affected by this act, shall sit in judgment on any question growing out of this act, nor shall the supervisors of the said respective towns, interested in this act, be entitled to vote on the appointment of the commissioners directed by this section to be made."

When this case was here on an appeal from an order requiring the town of Kinderhook and its commissioner of highways to unite with the town of Chatham in the repair of this bridge it was held, in reversing such order, that the saving clause contained in section 5 of chapter 21, p. 66, Laws 1828 (Second Session, bound with Laws of 1829), which was the general repealing act following the enactment of the Revised Statutes of 1828, was effective to preserve to the town of Kinderhook whatever rights, if any, or relief from a specific burden, it had acquired by chapter 91, p. 76, Laws 1818, and proceedings taken under it. Matter of Webster, 77 App. Div. 560, 78 N. Y. Supp. 1101. We may therefore confine our inquiry to the question whether the town of Kinderhook, by proceedings duly had under the act of 1818, has been relieved from the burden of repairing or rebuilding the bridge in question, and the determination of that question involves consideration of the correctness of the rulings of the learned referee as to the admission of evidence upon the hearing before him. He received, over the objection of the town of Chatham, from a book produced by the county clerk purporting to be minutes of the board of supervisors of Columbia county held on October 9, 1818, a resolution of such board appointing three commissioners under the act; also certain records from the record books of the towns of Kinderhook and Ghent purporting to be copies of the report of such commissioners; and also a map produced from the files of the county clerk's office for the purpose of identifying the bridge in question as the one referred to in the map of said commissioners. The proceedings under the act of 1818 sought to be proven took place 85 years prior to the hearing before the referee, and the rules of evidence concerning ancient documents were therefore applicable to the case. The general rule is that such a document, if it comes from a custody which the court deems proper, and is itself free from any indication of fraud or invalidity, proves itself. Greenleaf on Ev. § 2; Stephen's Dig. Ev. art. 88; Am. & Eng. Enc. of Law 324–326. The resolution of the board of supervisors appointing commissioners was contained in a book produced by the county clerk of the county, who testified that it was the records of such board for 1818; that he found it deposited among his records, and that the older records of the board were in his custody as county clerk. It is true that boards of supervisors have clerks of their own, who are required by law to keep a record of the proceedings of the board, and to keep its books and papers open to public inspection (County Law, Laws 1892, p. 1756, c. 686, § 50); yet these officers change frequently. The location of their offices follows the individual who for the time being holds the office, and may change as often as there is a change in the officer. The county

clerk's office has a fixed location for the preservation of county records, and we are not prepared to say that his office is not a proper place for the preservation of these ancient records. On the other hand, we think such custody by the county clerk was reasonable and proper under the circumstances appearing here, and that the referee properly received the resolution in evidence without other proof than that mentioned.

The record received in evidence by the referee from the books of the town clerk of the town of Ghent purported to be that of a certified copy of the report of the commissioners appointed under the act of 1818 to the court of common pleas of the county of Columbia. The record contains a copy of a certificate of the county clerk of Columbia county under date of April 27, 1829, certifying that the report is a copy of the report of the commissioners respecting bridges in Ghent, Claverack, Kinderhook, and Chatham, filed in the office of the county clerk on the 19th day of February, 1819, and the entire record is certified under the date of June 5, 1835, by the person shown by the records of the town of Ghent to have been the town clerk of the town at that time, "to be a true copy from the original report." The record itself therefore is clearly an ancient one, and the rules of law respecting ancient documents and records apply. The record, however, was secondary evidence, but a proper foundation had been laid for the introduction of such evidence. The law of 1818 required the commissioners appointed thereunder to make return of their proceedings at the next court of common pleas of said county after the same shall have been completed. The clerk of that court was the clerk of Columbia county, and it was admitted that the present clerk of that county had made diligent search in his office for the report of these commissioners, and that he was unable to find it there. The presumption is that the commissioners made and filed their report as required by law. That presumption is strengthened by the certificates above referred to that they did make and file it in the clerk's office, and it was therefore proper, on showing its loss, to receive secondary evidence of the existence of the report and its contents. Steph. Dig. Ev. art. 71, subd. 3; Mandeville v. Reynolds, 68 N. Y. 533.

The report shows, among other things, that the commissioners had unanimously adjudged and determined, in order to equalize the burdens arising from the support of bridges between said several towns in pursuance of said act of the Legislature that the town of Ghent should be charged with the support and maintenance of the west half of the bridge crossing the Kline Kill creek near the house of John E. Vosburgh, and that the town of Ghent forever exonerate and bear harmless the towns of Claverack and Kinderhook from any expense or burden arising from the building and support thereof. The record received from the minute book of the town of Kinderhook purported to be that of a certificate signed by the commissioners appointed under the act of 1818, certifying, among other things, that they had charged the town of Ghent with the support of the west half of the bridge over the Kline Kill creek near the house of John E. Vosburgh, and have ordered that said town of

Ghent forever exonerate the said towns of Claverack and Kinderhook from all expense arising from the support thereof. This record is certified by the assistant town clerk of that town as having been recorded therein under date of the 14th (or 19th) day of December, 1818, and for the reasons above given was properly received as an ancient record.

The map which was received in evidence by the referee was from the files of the county clerk, and bears the indorsement of the clerk as having been filed in the office in January, 1802. It purported to have been a map of the division of the estate of the late Everett Vosburgh, deceased, among his children, and purports to have been signed by commissioners in partition of that estate. It is not doubted that the map came from proper custody, and its antiquity sufficiently proved the signatures of the commissioners by whom it purports to have been made. People v. Denison, 17 Wend. 315. The only purpose of the map was to identify the location of the bridge in question, and it was properly receivable for that purpose.

It is admitted by the town of Chatham and its commissioners of highways that for many years the bridge in question has been supported and maintained entirely at the joint expense of the towns of Chatham and Ghent, each bearing one-half part of the expense of such repairs, and without expense to the town of Kinderhook. This admission shows that these towns have been acting exactly in accordance with the requirements of the report of the commissioners under the act of 1818, and these facts, together with the legal presumptions that the commissioners in question were duly appointed under that act, and that they possessed all the qualifications required thereby, render it clear that, if we are right in what we have said concerning the correctness of the referee's ruling as to the admissibility of evidence, his conclusion that the town of Kinderhook is exonerated from contributing to the maintenance of the bridge is entirely correct.

The order confirming his report should therefore be affirmed, with costs. All concur.