THOMAS KENNEDY *vs.* LIZZIE G. DOYLE.

If one of two defendants goes into insolvency, and this fact is suggested, the court may order the trial to proceed as to the other defendant.

A promise by a minor to pay money borrowed on joint account with another person may be ratified by the minor after coming of age, like other voidable promises.

The entry of a baptism, contemporaneously made by a Roman Catholic priest, in the discharge of his ecclesiastical duty, in his church record of baptisms, is competent evidence after his death, of the date of the baptism, if the book is produced from the proper custody; although he was not a sworn officer, and the record was not required by law to be kept.

GRAY, J. 1. This action was brought against two sisters upon an agreement of both to pay money borrowed by them on their joint account from the plaintiff. One of them suggested her insolvency, and set up no other defence. The other pleaded infancy at the time of the agreement. It was within the discretion of the presiding judge to order the trial to proceed against her alone.

2. The agreement, if made when she was under age, stood, as against her, on the same ground as any other contract by an infant for anything but necessaries. It was voidable and not void, and, if affirmed by her after coming of age, was binding upon her.

3. The remaining exception presents an interesting and important question of evidence. The parties being at issue upon the point whether the defendant was of age when she made the agreement, the plaintiff, to prove that she was, offered a book, which was admitted to be the church record of baptisms in a Roman Catholic church in Lowell, regularly kept by McDermott, the priest of that church for a series of years, produced from the custody of O'Brien, the present priest, into whose hands it came

upon the death of McDermott, and containing the following entry in McDermott's handwriting, and signed by him : " 1837 December 17th. Baptized Joanna, born 12th, of Michael and Mary Doyle. Sponsors, Jeremiah Kennedy and Bridget Doyle." There was also evidence that the defendant in this action was the Joanna Doyle named in this record. It does not appear to have been denied at the trial, and it was assumed at the argu- ment, that the priest performed the rite of baptism and made the entry upon the record in the discharge of his ecclesiastical duty, according to the rule and custom of his church. But there was no evidence that he was a sworn officer, or that the book was required by law to be kept; and upon this ground the defendant objected to its admission. The presiding judge, however, admitted it as competent evidence of the date of the baptism only.

In England, a church record of baptisms, kept by a clergyman of the established church, is admissible, even before his death, accompanied by evidence of the identity of the child, to prove the date of its baptism ; but not the time of its birth, because the clergyman has no authority to make inquiry about the time of birth or any entry concerning it in the register. *Draycott* v. *Talbot*, 3 Bro. P. C. (2d ed.) 564. *May* v. *May*, 2 Stra. 1073. *Wihen* v. *Law*, 3 Stark. R. 63, and other cases cited in Stark. Ev (4th Eng. ed.) 299, note *f*. *Doe* v. *Barnes*, 1 M. & Rob. 389. In the Church of England, from the time of the Reformation, registers of baptisms, weddings and burials were kept by order of the crown as head of that church ; and, in the words applied by Lord Chief Baron Gilbert to the original order of Henry VIII. on this subject, " when a book was appointed by public author- ity, it must be a public evidence." Gilb. Ev. (3d ed.) 77. Lord Coke, in Noy, 146. Hubback on Succession, 470–474. The ordinances of the English Commonwealth in 1644 and 1653 provided for the registration of births, deaths and marriages. Sco- bell's Ordinances, 76, 236. *Dudly's case*, 2 Sid. 71. But these ordinances were annulled upon the restoration of Charles II And registers kept under ecclesiastical authority continued to be admitted in evidence by the courts, although not require

to be kept, nor declared to be evidence, by any statute. This is probably the meaning of Lord Holt's *dictum* that such regis= ters are evidence from "the nature of the thing," and of the additional words attributed to him by one reporter of least au= thority — "though no law for it." *Stainer* v. *Burgesses of Droit- wich*, 1 Salk. 281; *S. C.* 12 Mod. 86; Skin. 623; Holt, 290 About the time of the decision of that case, acts of parliament began to be passed, which were repealed or altered from time to time, for the registration of births or baptisms, marriages and burials, generally limited to the established church; and (unless for a few years towards the end of the last century) the law of England does not seem to have provided for register- ing births or deaths of any person, nor baptisms, marriages or burials in any form except that of the established church, from 1706 until 1836, when the general registration act of 6 & 7 Will. IV. *c.* 86, was passed. Hubback on Succession, 475–477, 493, where the statutes are cited. The English judges, adhering to the principle of admitting in evidence as public documents those registers only which the law required to be kept, have con- sidered all others as mere private memoranda, and have refused to admit registers regularly kept by dissenters unless supported by the testimony of the person keeping them or other witnesses. *Birt* v. *Barlow*, 1 Doug. 171. *Newham* v. *Raithby*, 1 Phillim. R. 315. *Ex parte Taylor*, 1 Jac. & Walk. 483; *S. C.* 3 Man. & Ry. 430 *n.* *Doe* v. *Bray*, 8 B. & C. 813; *S. C.* 3 Man. & Ry. 428. *Whittuck* v. *Waters*, 4 C. & P. 375. Vice Chancellor Shadwell refused even to admit an entry in the register of the Roman Catholic chapel of the Sardinian ambassador in London as evi- dence of the baptism of the ambassador's son. *D'Aglie* v. *Fryer*, 13 Law Journal, N. S. Ch. 398. "The principle on which entries in a register are admitted," said Mr. Justice Erle in a recent case, "depends upon the public duty of the person who keeps the register to make such entries in it, after satisfying himself of their truth." *Doe* v. *Andrews*, 15 Q. B. 759. See also *Conway* v. *Beazley*, 3 Hagg. Eccl. 651; *Athlone's claim*, 8 Clark & Fin. 262; *Earldom of Perth*, 2 H. L. Cas. 873, 874; *Coode* v. *Coode*, 1 Curt. Ecc 764–767 Hubback on Succession, 161, 365, 366, 514.

Almost two centuries before the passage of the statute of Will. IV., the founders of the Massachusetts Colony, though not less attached than other Englishmen to their own forms of religious worship, had the wisdom to perceive that it was more important for the civil government to preserve exact records of the dates of births and deaths, than of religious ceremonies from which they might be imperfectly inferred; and that the importance of recording those facts did not depend on the particular creed or church government of the individual, but applied equally to the whole people. They accordingly left the baptism of the living and the burial of the dead to the churches; but by an ordinance of 1639 enacted " that there be records kept of the days of every marriage, birth and death of every person within this jurisdiction;" and similar statutes have been ever since in force in Massachusetts. 1 Mass. Col. Rec. 276. 4 Ib. pt. 1, 290. Prov. Sts. 4 W. & M. *c.* 10; 4 & 5 W. & M. *c.* 21; 7 Will. III. *c.* 6, (ed. 1726,) 17, 36, 70. Anc. Chart. 43, 181, 182, 243, 256, 285. Sts. 1786, *c.* 3, § 6; 1795, *cc.* 7, 69. Rev. Sts. *c.* 15, §§ 46, 47; *c.* 75, §§ 17, 18, 23. Gen. Sts. *c.* 21; *c.* 106, §§ 16, 17. The record of a marriage by the justice of the peace or minister, or the town clerk's or registrar's record of births, marriages and deaths, kept as required by these statutes, or a duly certified copy of either, is held competent evidence. 2 Dane Ab. 296. *Milford* v. *Worcester*, 7 Mass. 56. *Commonwealth* v. *Norcross*, 9 Mass. 492. 1 Stark. Ev. (4th Amer. ed.) 174, Metcalf's note The provision introduced into the Rev. Sts. *c.* 75, § 25, and reënacted in the Gen. Sts. *c.* 21, § 6, and *c.* 106, § 21, is but declaratory of the law in this commonwealth. Similar decisions have been made in other states, generally upon the ground of the record having been kept in the performance of a duty imposed by law; and those cases, in the reports of which no statute is referred to, may yet have been controlled by statute; just as the record admitted by the supreme court of the United States in *Lewis* v. *Marshall*, 5 Pet. 475, 476, was evidently kept according to the act of the provincial assembly of Pennsylvania of 1705, cited in *Stoever* v. *Whitman*, 6 Binn. 416.

It is perfectly true that in this commonwealth the law makes

no distinction between different sects of Christians, and the record of a Roman Catholic priest is of no less weight as evidence than that of a Congregational, or Protestant Episcopal, or any other minister. But our law not requiring any record of baptisms, the church book offered in evidence in this case, not having been kept under any requirement of law, was not a public record, and would not, had the priest who made the entries been still alive, have been admissible in evidence, unsupported by his testimony.

It becomes necessary, therefore, to determine whether his death has made his register competent evidence. Upon this question there seems to be some conflict of opinion in England.

The cases in which the registers of clandestine marriages in the neighborhood of the Fleet Prison in London have been rejected, even after the death of all the witnesses to the marriage, may be laid out of consideration; for those registers were not only kept without authority, but the marriage ceremonies there recorded were performed in direct violation of law, and the books showed upon their face that they were unworthy of credit. *Read* v. *Passer*, 1 Esp. R. 213; *S. C.* Peake R. 231. *Lloyd* v. *Passingham*, Coop. 155. *Nokes* v. *Milward*, 2 Addams, 391. *Doe* v. *Gatacre*, 8 C. & P. 578, and *note*.

The leading cases upon this subject are those in which Lord Holt held that entries, made in a tradesman's books by his servant or drayman in the usual course of his employment, were admissible in evidence after the death of the latter, upon proof of his handwriting. *Pitman* v. *Maddox*, 2 Salk. 690; *S. C.* 1 Ld. Raym. 732; Holt, 298. *Price* v. *Torrington*, 1 Salk. 285; *S. C.* 2 Ld. Raym. 873; Holt, 300. It was long since settled beyond controversy in England that an entry of the receipt of tithes in the books of a deceased rector was evidence for his successor; and the reason for this, assigned by Lord Hardwicke and Lord Ellenborough, was the absence of all interest to misstate, inasmuch as the entries could not be evidence for him during his life, and his representative would have nothing to do with the living after his death. *Glynn* v. *Bank of England*, 2 Ves. Sen. 43. *Roe* v. *Rawlings*, 7 East, 290, 291. So courts of law have admitted the

books of charges of a deceased attorney, and courts of chancery those of a deceased solicitor, for professional services, as evidence of the acts having been done for which the charges were made. *Warren* v. *Greenville,* 2 Stra. 1129. *Doe* v. *Robson,* 15 East, 32. *Skipwith* v. *Shirley,* 11 Ves. 64. *Ward* v. *Garnons,* 17 Ves. 140, 141. *Rawlins·*v. *Rickards,* 28 Beav. 370. Memoranda, signed by an attorney, of his having served an order of notice have been held competent evidence after his death. *Doe* v. *Turford,* 3 B. & Ad. 890. *Stapylton* v. *Clough,* 2 El. & Bl. 937, 938. And an entry made by a deceased clerk in a notary's book, of the dishonor of a bill of exchange, was admitted, on the ground, as stated by Lord Chief Justice Tindal, " that it was an entry made at the time of the transaction, and made in the usual course of business, by a person who had no interest to misstate what had occurred." *Poole* v. *Dicas,* 1 Bing. N. C. 652.

In *Higham* v. *Ridgway,* 10 East, 109, entries of charges in the books of a deceased man midwife, marked therein as paid six months afterwards, were admitted as evidence of the time of the birth of the child. It is true that one reason assigned by the court was that they were against his interest, yet, as was said by Mr. Justice Story, " this seems very artificial reasoning," especially in view of the fact that the payment was made six months after the charge. *Nicholls* v. *Webb,* 8 Wheat. 335. And the supreme judicial court of Maine, in a well considered case, admitted charges in the books of a deceased physician in the regular course of his business, without evidence of payment or any other circumstance bearing against his interest. *Augusta* v. *Windsor,* 19 Maine, 317.

Lord Chancellor Plunket repeatedly admitted the books of a Roman Catholic chapel in Dublin, made by Roman Catholic priests whose deaths and handwriting were proved, as evidence of marriages and baptisms, and on the last occasion, after argument, gave this reason for their admission : " They are the entries of deceased persons, made in the exercise of their vocation contemporaneously with the events themselves, and without any interest or intention to mislead." *O'Connor* v. *Malone,* 6 Clark & Fin. 576, 577. *Malone* v. *L'Estrange,* 2 Irish Eq. R. 16.

In some modern English cases, the judges have shown an inclination to limit the admission of entries made in the course of business; and to rest the earlier decisions, more than those who made them did, on the hypothesis that the entries were against the interest of the person making them. This tendency appears very strongly in the judgments of Lord Denman. *Chambers* v. *Bernasconi*, 1 Cr., Mees. & R. 347; *S. C.* 4 Tyrwh. 531. *Rex* v. *Cope*, 9 C. & P. 727. *De Rutzen* v. *Farr*, 4 Ad. & El. 56; *S. C.* 5 Nev. & Man. 620. *The Queen* v. *Worth*, 4 Q. B. 132. 1 Smith's Lead. Cas., note to *Price* v. *Torrington*.

In the case of *Davis* v. *Lloyd*, 1 Car. & Kirw. 275, to show the infancy of one party, the other offered in evidence the book of a Jewish synagogue in the handwriting of the chief rabbi, who had since died, containing an entry of the circumcision of the party by him; and offered to show that by the Jewish law the custom was for a child to be circumcised on the eighth day after his birth, and it was the duty of the chief rabbi to perform the rite and make the entry. Lord Denman, after consulting Mr. Justice Patteson, would not admit the evidence. No reasons are reported, and as the party who offered the evidence prevailed, the case was not brought before the court in bank. The facts were very similar to those now before us, with one important difference. Here, the record was offered in order to prove full age, and was admitted only to show that the child was in being when the record was made. There, the evidence was offered to prove infancy, by the aid of presuming the child to have been only eight days old at the time of the entry; and that depended on the performance of duty by his parents, of which there was no evidence. The entry may have been rejected on that ground, just as legal records of baptisms, as above stated, are not evidence of the time of birth. If the ruling was made upon broader grounds, we do not see how it can be reconciled with the weight of English authority as shown by the cases already cited. See also 1 Stark. Ev. (4th Amer. ed.) 319–322; 1 Phil. Ev. (4th Amer. ed.) 356; 1 Taylor on Ev. (3d ed.) § 633.

In the United States, the law is well settled that an entry made by a person in the ordinary course of his business or

vocation, with no interest to misrepresent, before any controversy or question has arisen, and in a book produced from the proper custody, is competent evidence, after his death, of the facts thus recorded. In a very early case the supreme court of Connecticut admitted the record of a baptism by a minister of a parish, who had since died, as evidence of the fact of baptism. *Huntly* v. *Compstock*, 2 Root, 99. It has been repeatedly held in this commonwealth that the book of a bank messenger or a notary public, kept in the usual course of business, though not required by law, is competent evidence after his death. *Welsh* v. *Barrett,* 15 Mass. 380. *Porter* v. *Judson*, 1 Gray, 175. Similar decisions have been made by the supreme court of the United States and by other American courts of authority. *Nicholls* v. *Webb*, 8 Wheat. 326. *Gale* v. *Norris*, 2 McLean, 471. *Augusta* v. *Winsor*, above cited. *Sheldon* v. *Benham*, 4 Hill, (N. Y.) 131. *Nourse* v. *Mc Cay*, 2 Rawle, 70.

In the case before us, the book was kept by the deceased priest in the usual course of his office, and was produced from the custody of his successor; the entry is in his own handwriting, and appears to have been made contemporaneously with the performance of the rite, long before any controversy had arisen, with no inducement to misstate, and no interest except to perform his official duty. The addition of a memorandum that he had been paid a fee for the ceremony could not have added anything to the competency, the credibility, or the weight, of the record as evidence of the fact. An entry made in the performance of a religious duty is certainly of no less value than one made by a clerk, messenger or notary, an attorney or solicitor or a physician, in the course of his secular occupation.

*Exceptions overruled.*

*J. P. Converse*, for the defendant.

*A. R. Brown,* for the plaintiff.