KETCHAM, S. The will of Robert B. Wylie contains the provision:

"I give and bequeath to William F. Wadsworth of said Borough of Brooklyn, all the residue and remainder of my estate, real and personal in trust nevertheless to collect the rents, issues and profits and income therefrom to pay the same to my sister, Susan W. Noyes of Atlanta, Georgia, during the term of her natural life, and upon her death to pay over all of said estate to her son Sydney B. Noyes, to him, and his heirs forever."

Sydney B. Noyes has died intestate, leaving no widow or descendants, and no heirs at law or next of kin except his mother, Susan W. Noyes, and his sister by the half-blood on the paternal side, Annie A. Noyes. The sister is not of the blood of the testator, Robert B. Wylie, and is excluded from inheritance under his will. Real Property Law, Laws 1896, p. 618, c. 547, § 280. The only heir at law and next of kin to take the remainder in question is the mother, Susan W. Noyes; and, as in her person the life estate and the remainder merge, she is entitled to the entire estate.

The account will be settled as rendered, and a direction in accordance with these views should be embodied in the findings and decree. Decree accordingly.

(58 Misc. Rep. 477.)

In re LEAIRD'S WILL.

(Surrogate's Court, New York County. March, 1908.)

WILLS—PROBATE—EVIDENCE OF EXECUTION.

A will of one who died in 1907, which was executed in 1864, was offered for probate. It was found after testator's death in a place where it might be reasonably expected to have been found, and was executed in the presence of three witnesses, two of whom were dead, and the death of the third was reported to have occurred in West Virginia in 1884. The handwriting of the witnesses, as well as that of the decedent, was sufficiently proven, and the paper was apparently drawn in the usual manner by one of the witnesses, who was a careful lawyer. Declarations of the testator not long before his death were proven to the effect that he made a will some 40 years before, and there was evidence that decedent was of sound mind. Held, that the will would be admitted to probate.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 49, Wills, §§ 697–728.]

In the matter of the will of George T. Leaird, deceased. Probate granted.

George Haas, for proponent.

Richard M. Martin, for Elizabeth J. Slack and another, in support of will.

Sutro & Wright, for contestants Chamberlain and others.

Page, Brant & Booth, for contestants Oakley and others.

Charles E. Simms, for Charles L. Davis and others.

C. A. Wadley, for William W. Meiners and another.

Joseph P. McGowan, special guardian, pro se.

BECKET, S. More than 43 years ago on September 22, 1864, the paper propounded purports to have been executed, when decedent was about 29 years old. He was never married, and he had no relatives living at the time of his death nearer in degree than first cousins,

one of whom is the proponent and residuary legatee of the personal property only. Decedent died March 24, 1907, and shortly afterward this paper was found by Mr. William G. McCormack, a disinterested witness, an old real estate man, who had known the decedent for many years. The circumstances respecting its discovery are as follows: For several years prior to 1889 decedent lived with the proponent and his wife at No. 259 Lenox avenue. About that year he moved to No. 115 West 122d street, where he died. Proponent no longer resides at No. 259 Lenox avenue, but his wife continues to live there. Mr. McCormack was well acquainted with both, and proponent suggested to him that decedent's will, he thought, was in No. 259 Lenox avenue. Accordingly Mr. McCormack called there upon Mrs. Wood, and told her that her husband thought decedent's will was in a tin box in a closet off the front room on the second floor. Mrs. Wood and the witness together went to the room, and the former produced from the closet an unlocked tin box, and the witness opened it and glanced over the various papers in it, and among the number he found an envelope (Exhibit 26) that has, in wax, the impress of a seal bearing the initials "J. B. N.," and also the words, "Jos. B. Nones, Notary Public, U. States Commissioner and Commissioner for all the States & Territories, City of New York, State of New York," printed in one corner of the envelope, and a paper wafer bearing the same printed words pasted over its flap; the envelope being indorsed in Joseph B. Nones' handwriting:

"The Last Will & Testament of George T. Leaird, dated 22 Sept., 1864, made in New York City. Not to be opened till after the death of George T. Leaird."

The envelope when so found was open, however, and in it the propounded paper. Mr. McCormack on that occasion, after reading it to Mrs. Wood, took it away with him, and immediately he, accompanied by the proponent, took it to proponent's attorney, by or before whom and the witness James Nash Webb it was read, and then forthwith filed for probate. The finding of the paper and its envelope, and the subsequent custody, in view of all the circumstances presented, do not suggest suspicious circumstances, nor is there apparently any charge of fraud seriously urged against the paper itself. Collectively the numerous contestants, who are distant collateral relatives, represented by various groups of attorneys and the special guardian, raised the usual issues, but some of them only objected to the factum, others allege lack of testamentary capacity, and the exercise of undue influence. None of the objections have been withdrawn, but all of the contestants content themselves with resting upon the proponent's case —calling no witnesses of their own, and urging, after nearly three days of trial, simply that there has been a technical failure of proof by the proponent. In Matter of Briggs, 47 App. Div. 47, 62 N. Y. Supp. 294, a somewhat similar case, except that there the attestation clause is lacking, the surrogate's decree admitting the will to probate was affirmed by the Appellate Division, and Rumsey, J., says:

"The only question presented is whether upon the uncontradicted evidence it was proper for the surrogate to decree the probate of this will, which was

made in 1863. * * * It appeared that each of the witnesses was dead. * * * The will seems to have been produced from the place where the testator kept his papers. Although there was a contest, no testimony was produced on the part of the contestants. * * * Although it is doubtful whether this will can be considered to be an ancient document, so as to raise a presumption as to due execution upon the presentation of it and proof of the handwriting of the subscribing witnesses, yet, in view of the length of time which elapsed since it was made and before it was presented for probate, and all the other circumstances proved in the case, this is clearly one in which the most liberal presumptions in favor of its execution should be indulged in. Cheeney v. Arnold, 18 Barb. 434; Jackson v. Laroway, 3 Johns. Cas. 283; Jackson v. Blanshan, 3 Johns. 292, 3 Am. Dec. 485; Id., 6 Johns. 54, 5 Am. Dec. 188. There can be no doubt that upon this proof, if there had been written before the signature of the witnesses an attestation clause reciting that the formalities required by the statute had been complied with, this evidence would have been amply sufficiently to warrant the finding that the will had been properly executed; but the attestation clause is not of itself evidence. It is simply a statement from which the courts can infer that the things required by the statute were done, because it is not likely that the witnesses would have signed an attestation clause if it were not true, and the probate is decreed upon the faith of that inference."

Proponent introduced sufficient testimony to satisfy me that the decedent was of sound mind and not unduly influenced, and I will so find. Now, all that remains is the factum of the paper and the sufficiency of proof thereof. The paper consists of six pages. Upon the side margin of pages 1 to 5, inclusive, appears the signature "George T. Leaird." The same signature is subscribed at the foot of the fifth page—the end of the will. The body of the paper is in Mr. Nones' handwriting. A full and satisfactory attestation clause, and at the end of that a further writing (both in Mr. Nones' hand, and of which the following is a copy), and the signatures of the subscribing witnesses, occupy the sixth page:

To item 5 is added before the execution of this will, the following words: "As also 4 lots & 3 houses, N. E. Corner of 118th St. & 3d Avenue—Harlem." And in item 9: "I leave the gold watch to Robert Laird that he now wears."

Edward Chace, No. 128 Lexington avenue, N. Y. City.

J. B. Nones, No. 76 Seventh street, city of New York.

John H. Baker, 1403 Broadway.

Subscribing witnesses Nones and Baker are both dead, and the proponent caused most diligent search to be made for the third witness, Edward Chace, which developed that he had wandered away from the city of New York about 1868, and his nephew, proponent's witness, Dr. George N. Miller, testified that he himself sent checks to his uncle, who was finally located in West Virginia, and thereafter reports came from West Virginia to the Chace family that Edward Chace died there in 1884.

The paper propounded contains specific devises of 12 pieces of real property—all to uncles and aunts then living, and to cousins, some of whom still survive. The executors named are both dead. One was proponent's father, and the other, Robert Laird, not related, but evidently held in high regard by the decedent, as he makes him (his only beneficiary who is not a relative) a cash legacy and the gold watch mentioned above. Satisfactory proof was furnished by two witnesses

as to the handwriting of the decedent, both as to the marginal signatures and the subscription.   Subscribing witness Joseph B. Nones was 92 years of age when he died, about 1887.   He resided at the time of his death at No. 117 West Forty-Ninth street.   Previously, and at the time he propounded paper purports to have been executed, he resided in Seventh street.   Whether or not he was actually admitted to the bar I do not know, but I do know that the phrase "a lawyer of the old school," as generally used, most aptly describes him.   He was a notary public and commissioner of deeds for all the states.   His signature after the attestation clause and the body writing of the instrument were proven to my satisfaction to be in his handwriting by the testimony of his grandson, who for many years lived in his household, and who finally became his executor.   His own holographic will, admitted to probate by the surrogate of this county, April 20, 1887, was offered in evidence.   It provides, among other things, for his burial "in the cemetery at Cypress Hills belonging to the Congregation 'Sherith Israel,' and in my own plot of ground in that cemetery."   A comparison of that instrument with the propounded paper establishes conclusively that Nones was the draftsman of the latter;   the same handwriting;   the same peculiarities of style;   the signature of the testator upon the margin of each page until the last;   the same quaint Hebrew phraseology by way of invocation in both instruments:   "Most Holy and Omnipotent God, in Thy Sacred and Adored Name, Amen"—the same unusual marginal paragraphing after the word "First" by means of the words "Imprimis" and thereafter as the instruments progress, "Item 1," "Item 2," "Item 3," "Item 4," and so on;   the same occasional use of the ampersand character.   Proponent also offered in evidence the record of the will of said Robert Laird.   That will, dated July 2, 1881, was admitted to probate by the surrogate of New York county November 22, 1883.   Mr. Nones was the draftsman of that paper also, and was a subscribing witness to it.   Again, see the invocation:   "Most Potent and Omnipotent God, in Thy Sacred and Adored Name, Amen."   The "Imprimis";   the "Item 1," "Item 2," "Item 3," "Item 4," etc.;   the signature of the testator upon the margins;   and such passages as these again, identical with those in the paper propounded;   "calling to mind the frailty and uncertainty of human life and being desirous of settling my worldly affairs," and "I commend my immortal being (or spirit) to Him who gave it, and my body to the earth";   "And as to my worldly estate and all the property real, personal and mixed";   and "Imprimis, my will is that, all my just debts and funeral expenses shall be by my executors hereinafter named, first paid out of my estate as soon after my decease as shall be by them found convenient"—all conclusively demonstrate Mr. Nones' handiwork.   The analysis of these three instruments and even the different spelling of "Leaird" and "Laird" indicate clearly that Mr. Nones must have been a very precise and accurate scrivener.   When he superintended the ceremonies of the execution of a testamentary paper, we may be sure that all of the formalities were strictly observed.   The proponent also introduced from the files of the surrogate's office various other wills and depositions bearing the signature "J. B. Nones," ranging in date from 1859

to 1869, which were satisfactorily established and proved as standards. I will find that the body and attestation clause of the propounded paper are in the handwriting of Joseph B. Nones, and that he signed the latter.

Let us now examine his relations, as shown by the testimony, to the other persons whose names appear upon the questioned paper. It is fairly shown that he had relations other than regards the propounded paper with the decedent, because it appears that as late as June 2, 1884, a deed was executed by Sarah Alsop to Patrick Crolly which was acknowledged by Mrs. Alsop before Mr. Nones as "Commissioner of the state of Florida for New York, 91 Duane street, corner of Broadway," and the witnesses to Mrs. Alsop's signature to that deed are the decedent and Mr. Nones. Also in the will of Robert Laird, referred to above, decedent is incidentally mentioned in the following bequests:

"Item 1, I give, devise and bequeath to my brother John Laird, of the city, county and state of New York, a bond and mortgage for the sum of three thousand ($3,000) dollars upon property in the city, county and state of New York in the 17th Ward of said city, made by George T. Leaird (on 5th street, near Avenue B), made to me & others, executors, and dated 17th day of January, A. D. 1857 (now belonging to me) and recorded," etc.

"Item 2, I give, devise and bequeath to my said brother John Laird the bond and mortgage for three thousand ($3,000) dollars upon property on the west side of Avenue B, near 4th street, in the 17th Ward of said city, county & state to me, on the 17th day of March, A. D. 1863, and recorded here in the aforesaid register's office on the 18th day of March, 1863," etc.

When reference is made to items 1, 2, and 3 in the propounded paper and the devises therein, the connection between Nones and the decedent is demonstrated. Nones also had relations with the subscribing witness, John H. Baker. Mr. Baker, who had been a sea captain, applied in March, 1876, for admission to the Sailors' Snug Harbor. The application bears the signature of John H. Baker, which is in the same handwriting as the signature "John H. Baker" signed to the attestation clause. Indorsed upon the application is a reference as to knowledge of the applicant and the correctness of his statement signed by two people, one of whom was said J. B. Nones, "No. 91 Duane St." It was also shown that Mr. Nones had acquaintance with Edward Chace, the third subscribing witness. It appeared that in the settlement of the estate of Caleb Chace, the father of said Edward Chace, in Boston, Mass., about the year 1865, certain of his heirs, including Edward Chace, executed deeds May 13 and June 9, 1865, of certain premises in Boston before Mr. Nones, as commissioner of Massachusetts for New York, "No. 262 Broadway." It also appeared in evidence that Edward Chace had a law office at No. 262 Broadway in the years 1863 to 1865, inclusive.

Subscribing witness Baker in 1864 resided with his wife, who was a dressmaker, at No. 1403 Broadway. He was admitted to the Sailors' Snug Harbor on or after March 15, 1876, and died at that institution on December 30, 1877. I am satisfied that the records of that institution showing his death are competent evidence, and were properly proven. Jacobi v. Order of Germania, 73 Hun, 602, 26 N. Y. Supp. 318; Kennedy v. Doyle, 92 Mass. 161; Layton v. Kraft, 111 App. Div. 842, 846, 847, 98 N. Y. Supp. 72; Hartshorne v. Metropolitan Life Ins.

Co., 55 App. Div. 471–473, 67 N. Y. Supp. 13; Demarest v. Friedman, 61 App. Div. 576–578, 70 N. Y. Supp. 816; Abb. Tr. Ev. (2d Ed.) 125.

Two nieces of John H. Baker's wife, Mrs. Donaldson and Mrs. Collins, both intelligent and disinterested witnesses, the latter being the wife of a county judge of Union county, N. J., testified that they resided with Mr. Baker and his wife at No. 40 Third avenue or No. 1403 Broadway in their early childhood, the early 60's; that Capt. Baker had a broken hip, and that while they lived with him he was in the habit of writing passages of poetry for them, his purpose evidently being to have the children commit them to memory. Some of these specimens of his handwriting one of his nieces preserved until recent years. The other was advised of his death by his wife, her aunt. They proved that the signature "John H. Baker" signed to the attestation clause was the signature of their uncle, John H. Baker. I see no reason to belittle the force of their testimony, especially in view of the fact that his handwriting had been impressed upon their minds in the manner described, and, moreover, no opposing testimony was offered.

Regarding subscribing witness Edward Chace proponent showed most exhaustive search for this man, and likewise for some record of his death, not only in New York county, but in the neighboring localities. He also caused an advertisement for information respecting him (and John H. Baker as well) to be published in at least one newspaper in every county of the state during the months of October and November, 1907. The information that the proponent produced respecting the said Edward Chace, excepting such as has been previously noted, was that he was a lawyer and at one time notary public in the city of New York. He was appointed notary public by Governor Horatio Seymour, and confirmed by the Senate on or about April 20, 1864. Under date of April 26, 1864, his notarial signature appears upon the book regularly kept by the county clerk in which are contained the signatures of the notaries and their oaths of office (Exhibit 40). Thereafter, on the 13th day of March, 1866, his signature again appears upon the notarial record of the county clerk's office, and the proponent introduced testimony of an expert in handwriting who gave it as his opinion that the signature "Edward Chace" appended to the attestation clause was written by the same hand as such notarial signatures. The proponent has amply satisfied me that I may dispense with the testimony of said Edward Chace under the provisions of section 2619 of the Code of Civil Procedure.

The declarations of the testator himself concerning the existence of the propounded paper were competent. As was said in Matter of Briggs, 47 App. Div. 47, 51, 62 N. Y. Supp. 294, 296:

"But they (testator's declarations) were competent evidence in the case because they were declarations of one from whom all the parties in this proceeding claim." Matter of Foley, 55 Misc. Rep. 168, 106 N. Y. Supp. 474; Matter of Nelson, 141 N. Y. 157, 36 N. E. 3.

Moreover, his testamentary capacity is at issue in this proceeding. Marx v. McGlynn, 88 N. Y. 374. The proponent called James N. Webb, who is in the real estate and insurance business, and who had known the decedent for fourteen years and had been his real estate agent

for nine years, and is now the temporary administrator of this estate, and it was brought out in his cross-examination by the contestants that about three years ago the decedent advised him that he had made a will, saying that he had made it "forty years ago," which would correctly describe the date of the propounded paper. The witness further testified on redirect examination:

"The conversation came about in this way: We were discussing a will made by my father-in-law, now deceased, made on his deathbed, and in the course of the conversation I said I hoped that nothing would occur in connection with his will in that way. He answered by saying that he made his will 40 years ago."

That was the entire conversation, and it took place in 1904, in May or June. Decedent also made declarations to a disinterested witness by the name of James J. Owens, some three or four years ago, when Owens called at the decedent's house with a Mr. Henry F. Booth. In their joint conversation with the decedent the name of the proponent was brought up, and the decedent stated that he would be well provided for; that he had made a will in proponent's favor. This declaration, as testified to by the witness Owens, was corroborated by the witness Booth.

In Rider v. Legg, 51 Barb. 260, the execution of the will was attested by three witnesses, all of whom were dead. Appended to the will was a full attestation clause in proper form. The signature of two of the subscribing witnesses were established beyond a reasonable doubt. The will, dated in 1833, was found about the year 1867 in the chest where the papers and money of the testatrix were deposited, and which after her death the family continued to use for similar purposes. There was no proof of the signatures of the testatrix or of the other subscribing witness. The will was obviously in the handwriting of one of the witnesses, and who seems to have understood what was essential to its due execution. The paper was offered in evidence in a suit in partition of land, and as to which testatrix died seised, by one of the parties, claiming title by devise in said will. The court said:

"After such a lapse of time absolute certainty cannot be expected, and, while such evidence should be received with caution to prevent imposition, yet that caution is not to be carried to a length which would override the ordinary and well-recognized rules of evidence in regard to proof of papers which have survived the parties who executed and witnessed them. No unvarying rule can be laid down which is to control every case, as the circumstances of each case must differ from any other, and hence it becomes the duty of the court to ascertain from all the facts and circumstances whether the instrument offered is established with reasonable certainty, and, if it is, to receive the same."

From all the facts and circumstances in this matter I am satisfied that the proponent has established with reasonable certainty the factum of this paper, and I accordingly will admit the same to probate, with costs to the proponent and special guardian to be paid out of the funds of the estate.

Probate decreed.